**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AVONDALE MILLS, Respondent.**

**No. 16243.**

United States Court of Appeals
Fifth Circuit.
March 29, 1957.

Rehearing Denied May 3, 1957.

Franklin C. Milliken, Stephen Leonard, Assoc. Gen. Counsel, Theophil C. Kammholz, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frederick U. Reel, National Labor Relations Board, Washington, D. C., for petitioner.

Frank A. Constangy, M. A. Prowell, Atlanta, Ga., Mildred McClelland, Atlanta, Ga., of counsel for respondent.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

The National Labor Relations Board petitions the court for the enforcement of its order issued upon its decision reported at 115 N.L.R.B. 130.

In the fall of 1954, the Textile Workers Union began an organizational campaign at respondent's textile mills in Sylacauga, Pell City, and Alexander City, Alabama. The respondent employs approximately six thousand people in its nine textile mills located in seven communities in Alabama. The Eva Jane Mill and the Catherine Mill, located in Sylacauga where the respondent has its principal offices, are the ones here involved.

The respondent was organized in 1897. Its history and policies are described in a booklet entitled "An Introduction to Avondale", which recites:

"Avondale's conception of the human side of industry is progressive, dynamic—never static. It began when this business began, and has developed through the years, always endeavoring to keep pace with the nation's steadily advancing standard of living. This has found expression in a constantly broader appreciation of recreational, social, health, cultural, and security programs, all of which have been developed in cooperation with employee groups.

\* \* \* \* \*

"Avondale considers the relationship with its employees to be a partnership in which benefits and adversities are shared as all strive together to make the organization a better and more successful one. As is true in all partnerships, each individual should make his maximum contribution to the program."

The booklet, of some fourteen printed pages, describes what it refers to as Avondale's program for profit-sharing, vacations, insurance, promotion, recreation, community activities, educational program, etc.; and refers to a smaller separate pamphlet entitled "Procedure for Handling Employee Problems or Complaints," which details five steps an employee may take in bringing a problem or complaint from his assistant foreman up to and including the president of the company.

Other than the two pamphlets mentioned, the consistent policy of the company has been not to have written rules, but to rely upon rules and policies evolved from and proved workable in custom and practice, including a practice not to discipline an employee for violation of a rule until the rule had been expressly called to his attention and he had been advised that future violations would result in discharge or discipline. Such matters as hours of work, lunch periods, order in the plant, quality standards, etc. were all regulated by custom and no written rules were posted in the plant. The Trial Examiner found, as the evidence shows: "The plant rules being unwritten, were matters of custom, some possibly dating back nearly 60 years."

The company makes no effort to prohibit general discussions of any matter whatever by employees in its plants during nonwork time. It has, however, prohibited solicitation within its plants during actual work time for any purpose, or cause, other than the annual Red Cross charity solicitation. As the Trial Examiner found, "The invoking of this rule against union solicitation and the subsequent discharge of employees alleged to have violated the rule constitutes the most important feature of this case."

The Trial Examiner found that,

"By interrogating its employees concerning their union sentiments and activities, soliciting employees to withdraw their membership cards from the Union, and threatening to close down the plant if the Union came in, and threatening to take out certain benefits, the Respondent interfered with, restrained, and coerced its employees in the exercise of the rights guaranteed in Section 7 of the Act [29 U.S.C.A. § 157], and thereby engaged in unfair labor practices within the meaning of Section 8(a) (1) of the Act [29 U.S. C.A. § 158(a) (1)]."

No exceptions to these findings were filed, and they were adopted by the Board. There is no defense to the Board's Order so far as it is based on such findings, and to that extent, of course, it is enforced.

The Trial Examiner further found that the General Counsel had failed to prove that the company, in violation of Section 8(a) (1) of the Act, either promulgated or invoked the rule against union solicitation for discriminatory reasons. He therefore concluded that the company did not violate Sections 8(a) (1) and (3) of the Act when it discharged employees Jones, Rich and Parker for violating this rule. The Board did not agree with such

findings and conclusion, and further held that Jones' discharge was discriminatory in any event.

The issues here are: 1. Whether substantial evidence on the record as a whole supports the Board's finding that the company's no-solicitation rule was invoked and applied for discriminatory reasons, and 2., assuming that it was not, whether there is other substantial evidence to support the Board's finding that respondent discriminatorily discharged employee Jones.

 There is and can be no dispute that the company had a right to prohibit union solicitation in its plant during working hours.[1] An otherwise valid no-solicitation rule, however, cannot be invoked or applied for a discriminatory anti-union purpose.[2] There was no dispute in the evidence that solicitation of union membership during work hours had interfered with production and plant efficiency, and that when that became obvious the company took action by making its employees aware of the no-solicitation rule in the same manner that it made them aware of its other rules. That much the company had a right to do. The fact that the rule had not been posted on the bulletin board, or otherwise publicized, before the occasion for its use arose is consistent with the company's practice as to all of its rules. The evidence fails to establish that any solicitation in violation of the rule had ever been permitted. Nor does the fact alone that the company was opposed to the union, as was its lawful right, furnish substantial evidence of an unlawful and discriminatory purpose in invoking and applying its no-solicitation rule. On the first issue, then, we agree with the Trial Examiner, and find that there was no substantial evidence to support the Board.

 On the second issue, whether employee Jones was, nevertheless, discriminatorily discharged, we think that the Board's findings, though contrary to those of the Examiner, are supported by substantial evidence on the record as a whole, and, hence, should be sustained by us. N. L. R. B. v. Akin Products Co., 5 Cir., 209 F.2d 109, 111. Jones was "the outstanding union adherent in the plant," according to the Trial Examiner. There was substantial evidence tending to establish the following facts: In addition to warning Jones and reading him the no-solicitation rule, the company sent its personnel clerk, Cleghorn, to make an appeal to him to stop his union activity. When discharged, Jones denied, with considerable reason, that he had solicited Nicholson, who had informed against him, and asked for a chance to prove his innocence. Instead, the foreman told him that he could go see Mr. Fred Halstead, the union organizer. When Jones appealed his discharge, he was met with similar remarks from the superintendent and from the general superintendent. Without detailing the other matters mentioned by the Board, we hold that there was substantial evidence to support its findings on this second issue.

In accordance with the foregoing opinion, the Board's order is in part enforced and in part denied enforcement.

Enforced in part and denied in part.

**1.** Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 797, 798, 803, note 10, 65 S.Ct. 982, 89 L.Ed. 1372, approving Peyton Packing Co., 49 NLRB 828, 843–844, enforced by this Court, N. L. R. B. v. Peyton Packing Co., 142 F.2d 1009, 1010.

**2.** Peyton Packing, supra; see also N. L. R. B. v. William Davies Co., 7 Cir., 135 F.2d 179, 181, certiorari denied 320 U.S. 770, 64 S.Ct. 82, 88 L.Ed. 460; Carter Carburetor Corp. v. N. L. R. B., 8 Cir., 140 F.2d 714, 716–717; N. L. R. B. v. Denver Tent & Awning Co., 10 Cir., 138 F.2d 410.