NATIONAL LABOR RELATIONS BOARD *v.*
UNITED STEELWORKERS OF AMERICA,
CIO, ET AL.

No. 81.   Argued January 29, 1958.—Decided June 30, 1958.*

*Dominick L. Manoli* argued the causes for petitioner.
With him on the briefs were *Jerome D. Fenton* and
*Stephen Leonard.   Solicitor General Rankin* and *Frederick U. Reel* were also with them on the brief in No. 289.

*David E. Feller* argued the cause for the United Steelworkers of America, CIO, respondent in No. 81.   With
him on the brief was *Arthur J. Goldberg.*

*Together with No. 289, *National Labor Relations Board* v. *Avondale Mills,* on certiorari to the United States Court of Appeals for the
Fifth Circuit.

*Frank A. Constangy* argued the cause for respondent in No. 289. With him on the brief were *M. A. Prowell* and *Fred W. Elarbee, Jr.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

These two cases, argued in succession, are controlled by the same considerations and will be disposed of in a single opinion. In one case the National Labor Relations Board ruled that it was not an unfair labor practice for an employer to enforce against his employees a no-solicitation rule, in itself concededly valid, while the employer was himself engaged in anti-union solicitation in a context of separate unfair labor practices. This ruling was reversed by a Court of Appeals.[1] In the second case the Board on the basis of similar facts, except that the employer's anti-union solicitation by itself constituted a separate unfair labor practice, found the enforcement of the rule to have been an unfair labor practice, but another Court of Appeals denied enforcement of the

---

[1] The statutory basis for the decision that this conduct constituted an unfair labor practice was § 8 (a) (1) of the National Labor Relations Act, 49 Stat. 449, 452, as amended by 61 Stat. 136, 140, 29 U. S. C. § 158 (a) (1), which provides:

"(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7; . . . ."

Section 7 provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purposes of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8 (a) (3)."

Board's order. We brought both cases here because of the importance of the question they present in the administration of the Taft-Hartley Act, and because of the apparent conflict in the decisions in the Courts of Appeals. 353 U. S. 921; 355 U. S. 811.

*No. 81.*—In April of 1953 the respondent Steelworkers instituted a campaign to organize the employees of respondent NuTone, Inc., a manufacturer of electrical devices. In the early stages of the campaign, supervisory personnel of the company interrogated employees and solicited reports concerning the organizational activities of other employees. Several employees were discharged; the Board later found that the discharges had been the result of their organizational activities. In June the company began to distribute, through its supervisory personnel, literature that, although not coercive, was clearly anti-union in tenor. In August, while continuing to distribute such material, the company announced its intention of enforcing its rule against employees' posting signs or distributing literature on company property or soliciting or campaigning on company time. The rule, according to these posted announcements, applied to "all employees—whether they are for or against the union." Later the same month a representation election was held, which the Steelworkers lost.

In a proceeding before the Board commenced at the instance of the Steelworkers, the company was charged with a number of violations of the Act alleged to have taken place both before and after the election, including the discriminatory application of the no-solicitation rule. The Board found that the pre-election interrogation and solicitation by supervisory personnel and the discharge of employees were unfair labor practices; it also found that the company had, in violation of the Act, assisted and supported an employee organization formed after the

election. However, the Board dismissed the allegation that the company had discriminatorily enforced its no-solicitation rule. 112 N. L. R. B. 1153. The Steel-workers sought review of this dismissal in the United States Court of Appeals for the District of Columbia Circuit, and the Board petitioned for enforcement of its order in the same court. The Court of Appeals concluded that it was an unfair labor practice for the company to prohibit the distribution of organizational literature on company property during non-working hours while the company was itself distributing anti-union literature; and it directed that the Board's order be modified accordingly and enforced as modified. 100 U. S. App. D. C. 170, 243 F. 2d 593.

*No. 289.*—In the fall of 1954 the Textile Workers conducted an organizational campaign at several of the plants of respondent Avondale Mills. A number of individual employees were called before supervisory personnel of the company, on the ground that they had been soliciting union membership, and informed that such solicitation was in violation of plant rules and would not be tolerated in the future. The rule had not been promulgated in written form, but there was evidence that it had been previously invoked in a non-organizational context. During this same period, both in these interviews concerning the rule and at the employees' places of work, supervisory personnel interrogated employees concerning their organizational views and activities and solicited employees to withdraw their membership cards from the union. This conduct was in many cases accompanied by threats that the mill would close down or that various employee benefits would be lost if the mill should become organized. Subsequently three employees, each of whom had been informed of the no-solicitation rule, were laid off and eventually discharged for violating the rule.

As a result of charges filed with the Board by the Textile Workers, a complaint was brought against the company alleging that it had committed a number of unfair labor practices, including the discriminatory invocation of the no-solicitation rule and the discharge of employees for its violation. The Board found that the interrogation, solicitation and threatening of employees by the company's supervisory personnel were unfair labor practices. Moreover, it found that resort to the no-solicitation rule and discharge of the three employees for its violation were discriminatory and therefore in violation of the Act; it further held that, even if the rule had not been invoked discriminatorily, the discharge of one of the employees had resulted solely from his organizational activities apart from any violation of the rule and was therefore an unfair labor practice. The Board ordered the cessation of these practices and the reinstatement of the discharged employees. 115 N. L. R. B. 840. Upon the Board's petitioning for enforcement in the Court of Appeals for the Fifth Circuit, the company contested only the portions of the Board's findings and order relating to the rule and the discharges. The court enforced the uncontested portions of the order but, finding insufficient evidence of discrimination in the application of the no-solicitation rule, denied enforcement to the portion of the order relating to the rule and to two of the discharges. As to the third discharge, the court agreed with the Board that it was the result of discrimination unrelated to a violation of the rule, and the court enforced the portion of the Board's order directing the employee's reinstatement. 242 F. 2d 669.

Employer rules prohibiting organizational solicitation are not in and of themselves violative of the Act, for they may duly serve production, order and discipline. See *Republic Aviation Corp.* v. *Labor Board,* 324 U. S. 793;

*Labor Board* v. *Babcock & Wilcox Co.,* 351 U. S. 105. In neither of the cases before us did the party attacking the enforcement of the no-solicitation rule contest its validity. Nor is the claim made that an employer may not, under proper circumstances, engage in non-coercive anti-union solicitation; indeed, his right to do so is protected by the so-called "employer free speech" provision of § 8 (c) of the Act.[2] Contrariwise, as both cases before us show, coercive anti-union solicitation and other similar conduct run afoul of the Act and constitute unfair labor practices irrespective of the bearing of such practices on enforcement of a no-solicitation rule. The very narrow and almost abstract question here derives from the claim that, when the employer himself engages in anti-union solicitation that if engaged in by employees would constitute a violation of the rule—particularly when his solicitation is coercive or accompanied by other unfair labor practices—his enforcement of an otherwise valid no-solicitation rule against the employees is itself an unfair labor practice. We are asked to rule that the coincidence of these circumstances necessarily violates the Act, regardless of the way in which the particular controversy arose or whether the employer's conduct to any considerable degree created an imbalance in the opportunities for organizational communication. For us to lay down such a rule of law would show indifference to the responsibilities imposed by the Act primarily on the Board to appraise carefully the interests of both sides of any labor-management con-

---

[2] 49 Stat. 449, 452, as amended by 61 Stat. 136, 142, 29 U. S. C. § 158 (c):

"The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit."

troversy in the diverse circumstances of particular cases and in light of the Board's special understanding of these industrial situations.

There is no indication in the record in either of these cases that the employees, or the union on their behalf, requested the employer, himself engaging in anti-union solicitation, to make an exception to the rule for pro-union solicitation. There is evidence in both cases that the employers had in the past made exceptions to their rules for charitable solicitation. Notwithstanding the clear anti-union bias of both employers, it is not for us to conclude as a matter of law—although it might well have been open to the Board to conclude as a matter of industrial experience—that a request for a similar qualification upon the rule for organizational solicitation would have been rejected. Certainly the employer is not obliged voluntarily and without any request to offer the use of his facilities and the time of his employees for pro-union solicitation. He may very well be wary of a charge that he is interfering with, or contributing support to, a labor organization in violation of § 8 (a)(2) of the Act.[3]

No attempt was made in either of these cases to make a showing that the no-solicitation rules truly diminished the ability of the labor organizations involved to carry their messages to the employees. Just as that is a vital consideration in determining the validity of a no-solicitation rule, see *Republic Aviation Corp.* ·v. *Labor Board, supra,* at 797–798; *Labor Board* v. *Babcock & Wilcox Co., supra,* at 112, it is highly relevant in determining whether a valid rule has been fairly applied. Of course the rules had the effect of closing off one channel of communica-

---

[3] 49 Stat. 449, 452, as amended by 61 Stat. 136, 140, 29 U. S. C. § 158 (a)(2).

tion; but the Taft-Hartley Act does not command that labor organizations as a matter of abstract law, under all circumstances, be protected in the use of every possible means of reaching the minds of individual workers, nor that they are entitled to use a medium of communication simply because the employer is using it. Cf. *Bonwit Teller, Inc.*, v. *Labor Board*, 197 F. 2d 640, 646; *Labor Board* v. *F. W. Woolworth Co.*, 214 F. 2d 78, 84 (concurring opinion). No such mechanical answers will avail for the solution of this non-mechanical, complex problem in labor-management relations. If, by virtue of the location of the plant and of the facilities and resources available to the union, the opportunities for effectively reaching the employees with a pro-union message, in spite of a no-solicitation rule, are at least as great as the employer's ability to promote the legally authorized expression of his anti-union views, there is no basis for invalidating these "otherwise valid" rules. The Board, in determining whether or not the enforcement of such a rule in the circumstances of an individual case is an unfair labor practice, may find relevant alternative channels available for communications on the right to organize. When this important issue is not even raised before the Board and no evidence bearing on it adduced, the concrete basis for appraising the significance of the employer's conduct is wanting.

We do not at all imply that the enforcement of a valid no-solicitation rule by an employer who is at the same time engaging in anti-union solicitation may not constitute an unfair labor practice. All we hold is that there must be some basis, in the actualities of industrial relations, for such a finding. The records in both cases—the issues raised in the proceedings—are barren of the ingredients for such a finding. Accordingly the judgment in No. 81 is reversed, insofar as it sets aside and requires the Board to modify its order, and the cause is remanded to

the Court of Appeals for proceedings not inconsistent with this opinion; in all other respects, it is affirmed. The judgment in No. 289 is affirmed.

*It is so ordered.*

Mr. Justice Black and Mr. Justice Douglas would affirm the judgment in No. 81 for the reasons set forth in the opinion of the Court of Appeals, 100 U. S. App. D. C. 170, 243 F. 2d 593.

Mr. Justice Black and Mr. Justice Douglas join in the dissent in No. 289, *Labor Board* v. *Avondale Mills.*

Mr. Chief Justice Warren dissenting in part and concurring in part.

These two cases concern the issue of whether the enforcement of company rules preventing union solicitation or distribution is an unfair labor practice when concurrent with this enforcement the employer embarks on a program of advocacy against the union. Contrary to what is stated in the opinion of the Court, I do not believe that both these cases are controlled by the same considerations. The pivotal distinction is that in *Labor Board* v. *Avondale Mills* the employer's antiunion activities were coercive in nature, while in *Labor Board* v. *United Steelworkers* they were not. I dissent from the judgment in No. 289, *Avondale Mills,* and concur in the result in No. 81, *United Steelworkers.*

In *Avondale Mills* this Court affirms the judgment of the Court of Appeals, which refused to enforce that portion of an order of the National Labor Relations Board which held that enforcement of the company's rule against solicitation on the premises during working hours was an unfair labor practice contrary to Section 8 (a)(1) of the National Labor Relations Act. I cannot agree with the conclusion of the majority that the record is

insufficient to sustain the action of the Board. Their conclusion depends on two circumstances. The first is the failure of the union or the employees to request the employer not to enforce his antisolicitation rule during the union organizing campaign. This is a slender reed. Union membership cards were first distributed to employees on November 10, 1954. On the very next day certain employees were summoned to the office of a management representative, who read the following statement:

> "It has come to our attention that you are attempting to solicit union membership in this plant during working hours, while the employees that you are attempting to solicit are at work. This is a violation of plant rules and any future instances of this sort will result in prompt dismissal."

Immediately thereafter the company's supervisory personnel engaged in a series of personal confrontations with union members and other employees, threatening loss of jobs and other benefits in case the organizing campaign continued or the plant became unionized. Furthermore, there was substantial evidence from which the Board was able to conclude that prior to November 11, 1954, there was in fact no rule against solicitation on the premises during working hours and that the rule was invoked solely as an antiunion measure. None of these conclusions was disturbed by the court below, which merely held that the invocation of the rule under these facts was part of the employer's right to oppose the union. The majority thus attaches significance, where the Board did not, to the fact that the union failed to request the company to grant for the union's benefit an exception to a rule that was promulgated to keep the union out.

The second circumstance on which the majority relies is the failure of the Board to make findings that reason-

able alternatives were not open to the union in the face of the no-solicitation rule. Admittedly, evidence and findings of this nature were elements in cases where the validity of employer no-solicitation and no-distribution rules was in issue. See *Labor Board* v. *Babcock & Wilcox Co.,* 351 U. S. 105; *Republic Aviation Corp.* v. *Labor Board,* 324 U. S. 793. However, there has heretofore been no indication that such evidence and findings were indispensable elements to every case in which these employer rules were being examined.[1] In contrast to *Babcock* and *Republic Aviation* we are not concerned here with the validity of these rules *per se.* The no-solicitation rule under examination here may well be valid if fairly applied. But the Board held that it was not fairly applied on account of its link to the company's campaign of coercion, and the evidence and findings on that issue are far more relevant to this case than a discussion of the site of the plant, the nature of the surrounding area, and the places of residence of the workers.

While praising "the Board's special understanding of these industrial situations," the majority opinion reverses the Board on the very sort of issues that are within its special competence. An examination of the record shows that the Board has already carefully apprized itself of the interests of both sides in this controversy. An employer

---

[1] In the opinion in *Republic Aviation* all that appears is that the company was a large nonurban manufacturer, many of whose employees lived at distances greater than walking distance from the plant in the Long Island area. 324 U. S., at 800. The opinion goes on to note that in both the *Republic Aviation* case and its companion *Le Tourneau Co.* case, "No evidence was offered that any unusual conditions existed in labor relations, the plant location or otherwise to support any contention that conditions at this plant differed from those occurring normally at any other large establishment." *Supra,* at 801. Evidence and findings now required by this Court were similarly absent in *Matter of Peyton Packing Co.,* 49 N. L. R. B. 828, quoted with approval in *Republic Aviation, supra,* at 803, n. 10.

has forbidden his employees to engage in union solicitation within the plant during working hours. He contemporaneously engages in a campaign of coercive antiunion solicitation during those same working hours. The validity of both practices—the enforcement of the no-solicitation rule and the coercive antiunion solicitation—comes into question, for they are not separable. Under one set of circumstances the no-solicitation rule may be valid. However, the determination as to whether an employer's antiunion activities are an unfair labor practice depends on the context in which those activities occur,[2] and no-solicitation rules are to be subjected to the same kind of scrutiny. Employees during working hours are the classic captive audience. At the very moment the employees in this case were under the greatest degree of control by their employer, they were forced to listen to denunciations of the union coupled with clear references to the personal disasters that would ensue if the union succeeded or if the particular employee continued to solicit for the union. These threats were themselves held to be unfair labor practices by the Board, and that holding was enforced by the Court of Appeals and is not in issue here. During this same working time the unionized employees, who under Section 7 of the National Labor Relations Act have a right to engage in concerted activity, were unable, due to their employer's own rule, to try to overcome the effect of his activities even though those activities were in violation of Section 8 (a)(1) of the Act. It is not necessary to suggest that in all circumstances a union must have the same facilities and opportunity to solicit employees as the employer has in opposing the union. However, the plant premises and working time are such decisive factors during

---

[2] Cf. *Labor Board* v. *Virginia Elec. & Power Co.*, 314 U. S. 469; *International Assn. of Machinists* v. *Labor Board*, 311 U. S. 72.

a labor dispute that when an employer denies them to the union and at the same time pursues his own program of coercion on the premises and during working hours, this denial is by itself an interference with the rights guaranteed in Section 7 of the Act and hence contrary to Section 8 (a)(1).

There is no issue in this case of balancing the employee's rights under Section 7 with the employer's right to promote "the legally authorized expression of his antiunion views." The only expression of views carried on by Avondale Mills was a series of threats against the union. Far from being "legally authorized," this expression of views constituted an unfair labor practice by itself. Thus we are not concerned in this case with the possibility of curtailing legitimate employer expression in violation of either the First Amendment or Section 8 (c) of the National Labor Relations Act. Moreover, it is no aid to the company that all the activities here involved occurred on plant property and during working hours. When a choice has been required between an employer's rights in his premises and the rights that Congress has protected under Section 7, this Court has not hesitated to give effect to the congressional will. *Republic Aviation Corp.* v. *Labor Board, supra; Labor Board* v. *Stowe Spinning Co.,* 336 U. S. 226; cf. *Labor Board* v. *Babcock & Wilcox Co., supra.*

In *United Steelworkers,* I concur in the result. The National Labor Relations Board declined to hold that the enforcement of an employer's no-distribution rule against a union was an unfair labor practice even though it was coupled with an antiunion campaign. The Court of Appeals reversed the Board on this point, modifying the Board's order accordingly. This Court sustains the Board. It is conceded that the enforcement of this no-distribution rule against the union is not by itself an

unfair labor practice. The Board determined that the employer's expressions of his antiunion views were noncoercive in nature. This fact creates a vital distinction between this case and *Avondale Mills*. Being noncoercive in nature, the employer's expressions were protected by Section 8 (c) of the National Labor Relations Act [3] and so cannot be used to show that the contemporaneous enforcement of the no-distribution rule was an unfair labor practice.[4]

---

[3] "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit."

[4] See H. R. Rep. No. 245, 80th Cong., 1st Sess. 8, 33; H. R. Conf. Rep. No. 510, 80th Cong., 1st Sess. 45. See also the remarks of Senator Taft during the Senate debate on the Act. 93 Cong. Rec. 6443–6444, 6446–6447, 6859–6860.