**NATIONAL LABOR RELATIONS BOARD, Plaintiff,**

v.

**Karl ROHLEN, as President of Crane Packing Company, and Crane Packing Company, Defendants.**

**No. 66 C 1901.**

United States District Court
N. D. Illinois, E. D.

Jan. 11, 1967.

William J. Cavers, Regional Atty., N. L. R. B., Region 13, Chicago, Ill., Marcel Mallet-Provost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., for plaintiff.

John Harrington, Albert J. Smith, Fyffe & Clarke, T. C. Kammholz, Vedder, Kaufman, Price & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

CAMPBELL, Chief Judge.

The National Labor Relations Board brings this action for an order directing defendants, Karl Rohlen and the Crane Packing Company (herein referred to as "Company") to comply with subpoenas of the Board which require the production of certain records containing the names and addresses of employees or, in the alternative, an order directing the defendant Company to comply with the election rule announced in the Board's decision in Excelsior Underwear Inc., 156 NLRB No. 111, requiring the defendant employer to file with the Regional Director a list of the names and addresses of all employees eligible to vote in a representation election.

The representation proceedings here involved commenced on April 13, 1966 when United Automobile, Aerospace and Agricultural Implement Workers of America (herein referred to as "U.A.W.") filed a petition with the Regional Office of the National Labor Relations Board seeking to represent the Crane Packing Company's employees at its Morton Grove, Illinois plant. The International Association of Machinist and Aerospace Workers (herein referred to as "IAM") intervened in the proceedings.

The Company and the two unions agreed to a Consent Election, to be conducted in accordance with the rules and regulations of the Board. The Company indicated, however, that it did not intend to comply with the rule of the Board announced in the Excelsior decision.

As stated, Excelsior requires that the list of employees and their addresses be made available to all parties to the election proceeding. Failure to comply with the rule is grounds for setting aside the election. The rule is intended to promote the communication of election issues to the employees and to assist the parties in challenging the ballots of employees believed to be ineligible to vote.

Though the Company refused to comply with the Excelsior rule, it did permit leaflet distribution outside the plant and inside the plant in timeclock areas. It also permitted UAW to examine a list

of employees names, without addresses, two days before the election.

In the election held on May 12, 1966, 339 employees voted against both unions, 188 voted for UAW, 2 voted for IAM and 57 ballots were challenged. There were 613 eligible voters.

Upon objection of UAW the Regional Director set aside the election for the Company's failure to comply with the *Excelsior* rule and directed that a second election be held and that prior thereto the *Excelsior* list be filed with the Board.

The Company has refused to comply with the directive to supply the *Excelsior* list and has refused to comply with a subpoena issued to obtain the books and records of the Company which contain the employees names and addresses. The Board now seeks the aid of this Court in enforcing its subpoena.

 Jurisdiction is based on Sections 11(2) and 9(c) of the National Labor Relations Act 29 U.S.C. Section 161 (2) and Section 159(c) which grant to the District Courts jurisdiction to issue orders to enforce subpoenas issued by the Board, and on 28 U.S.C. Section 1337 granting jurisdiction over all suits and proceedings under any law regulating Commerce. Pursuant to Section 11(2), subpoenas of the Board are to be enforced so long as the action of the Board is within its statutory authority, is not arbitrary and the information sought is not plainly incompetent or irrelevant. Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424. Applying this test, I hold that a subpoena for an *Excelsior* list is entitled to enforcement.

 The primary purpose of the *Excelsior* rule is to promote the communication of election issues so that the electorate might be better informed. Employees preparing to vote in so important an election should be given the maximum in opportunity to be fully informed on all sides of the issues so they may make a free and well reasoned choice. The rule is consistent with the best traditions of fairness which should govern any election proceeding.

 The Company has an exceptional opportunity, at the plant and through the mails, to present its views to the employees. A union or unions seeking representation should similarly have an adequate opportunity to present their views. The *Excelsior* rule provides for such an opportunity.

Direct mail compaigning has become an important part of our election process. Wherever democratic elections are held the names and addresses of the electorate are made available to the parties who hope to persuade them. In public elections "poll sheets" containing the names and addresses of all eligible voters are available. In corporate elections, the names and addresses of shareholders eligible to vote must be provided to participants to assure that their views are presented. 17 CFR 240.14a–7, 8. In union elections, membership lists must be made available to candidates. 29 U.S.C. Section 481(c). Anyone appealing to the election process on any question first asks, "who may vote and how do I reach them." Union representation elections should not be the only exception to free and total promulgation of voter lists.

 The Company argues that there are other means of communication available to a petitioning union, such as leaflet distribution, and therefore the names and addresses need not be disclosed. I do not read the cases cited by Company as holding that the availability of some form of communication with the employees precludes the Board in a representation proceeding from ordering that a list of names and addresses be made available. NLRB v. Babcock and Wilcox, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 and NLRB v. United Steelworkers of America, 357 U.S. 357, 78 S.Ct. 1268, 2 L.Ed.2d 1383, hold only that the Company need not permit union solicitation on its premises until the union establishes that there are no other means of communication available. In

those cases, the employer had an important interest to protect, i. e. the control of the use of its plant property. The secrecy of the names and addresses of employees in this case is not so substantial an interest or responsibility.[1]

May Department Stores Co. v. NLRB, 6th Cir., 316 F.2d 797, cited by Company was also concerned with an employer's right to refuse access to its plant property. In that case, the employer had addressed the employees on company premises and on company time and the union requested an opportunity to address the employees under similar conditions; that is, on company premises and on company time. The union request in *May* approached a demand for "equal time." These facts are totally unrelated to those here before me.

In addition, all of the above cases involved charges of unfair labor practices under Section 8 of the Act, and to find that the company was guilty of an unfair labor practice it was necessary for the Court first to find that the Company's conduct in denying access to its property, "seriously impeded union organization." In determining whether organization was "seriously impeded," the availability of alternate means of communication was an important consideration. We are not concerned with an unfair labor practice, but rather how best the Board may carry out its responsibility to conduct and supervise a representation election. The availability of alternate means of communication should not prohibit the Board from establishing procedures more likely to guarantee an adequate and effective exchange of thought.

 Whether leaflet distribution or direct mail campaigning is more effective or desirable should be left to the participants. It is not my place to tell the unions or the Company how best to conduct their campaign. I only note that in preparation for the first election the Company is said to have actively pursued a direct mail campaign even though it had a "captured electorate" in the plant —an advantage the unions do not enjoy. Supplying the unions with a list informing them who the employees are and where they can be found seems fundamental if the right to organize these employees is to be real.

I arrive at this decision with the awareness that although this issue has not yet been presented to and resolved by the United States Supreme Court other District Court Judges have, without unanimity, decided similar cases.[2]

For the reasons heretofore set forth, it is Ordered that the defendant Karl Rohlen as President of Crane Packing Company and defendant Crane Packing Company comply with the subpoenas *ad testificandum* and *duces tecum* as issued by the Regional Director and supply the Company's books and records containing the names and addresses of employees eligible to vote in the election, or, in the alternative, simply supply a list of the names and addresses of employees eligible to vote and provide the Board and its agents adequate opportunity to verify the list by examination of Company records.

---

1. I find little merit in the contention that the list may be used by competitors in an effort to "pirate" Crane employees. The list, when filed, need not contain any reference to particular skills or specialties of employees. Competitors seeking the services of Crane employees have other means to appeal to these employees and Crane, likewise, has legal means to redress such practices where contrary to accepted legal standards.

2. N.L.R.B. v. Hanes Hosiery Division-Hanes Corporation, (M.D., N.Car.), Dec. 2, 1966; N.L.R.B. v. Wolverine Division, Mid-State Metal Products, (E.D., Mich.), Dec. 19, 1966; and N.L.R.B. v. Montgomery Ward & Co. Inc., (M.D., Fla.) Dec. 20, 1966.