**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MEINHOLDT MANUFACTURING, INC., Respondent.**

No. 71–1143.

United States Court of Appeals, Tenth Circuit.

Nov. 29, 1971.

L. M. Cornish, Jr., and Edward B. Soule, Topeka, Kan., for petitioner.

Robert E. Williams, Washington, D. C., for respondent.

Before JONES*, HILL and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

This unfair labor practice case involves the question of whether there is substantial evidence supporting the National Labor Relations Board's conclusions that Meinholdt Manufacturing, Inc. of Topeka, Kansas, violated §§ 8(a) (1) (by prohibiting employee Irwin from talking to fellow employees at *any time* about terms and conditions of employment and threatening him with discharge should he do so and by threatening employees with discharge for engaging in union activities) and 8(a) (3) and (1) (for discharging employee Irwin because of his union activities) of the National Labor Relations Act. 29 U.S.C. § 158. The Board's Order directed the employer to reinstate Irwin in his former job and to make him whole in accordance with the Trial Examiner's remedy for any loss of earnings and to cease and desist.

The Board seeks enforcement of its Order and the employer seeks to set it aside. We deny enforcement. We find that the Order is not supported by substantial evidence.

This case, we believe, fits the rule stated in Interlake Iron Corporation v. National Labor Relations Board, 131 F. 2d 129, 133 (7th Cir. 1942):

"We recognize the right, the exclusive right, of the Board to draw reasonable inferences from the facts found. That is the province of the Board, and when inferences are reasonably drawn they constitute evidence and must be accepted by the courts as such; and inferences alone may, if reasonable, provide a link in the chain of evidence and constitute in that regard substantial evidence. *But an inference cannot be piled upon an inference, and then another inference upon that*, as such inferences are unreasonable and cannot be considered as substantial evidence.'' (Emphasis supplied.)

 It is incumbent on general counsel of the Board to prove unlawful conduct and unlawful purpose is not lightly to be inferred. National Labor Relations Board v. Federal Pacific Electric Company, 441 F.2d 765 (5th Cir. 1971). And while ascribing proper weight to credibility determinations of the Trial Examiner and the Board, it is the duty of this court to review the record as a whole to determine whether there exists substantial evidence to support the Board. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Mere suspicions of unlawful motivation are not sufficient to constitute substantial evidence. Lozano Enterprises v. National Labor Relations Board, 357 F.2d 500 (9th Cir. 1966). Substantial evidence is more than a mere scintilla. It means such evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

 Irwin, a planer operator, was first discharged by Meinholdt, a small plant operation, on April 1, 1968. Irwin had "bugged" his employer for higher wages and better working conditions. He had expressed his complaints to oth-

* Of the Fifth Circuit, sitting by designation.

er employees. Meinholdt officials testified that Irwin was discharged because he had often been absent from his planer machine. No union activities were then involved. Irwin, at his own request, was later rehired. When he returned Company officials admonished him to stay at his machine and to keep his "big mouth" closed and not to bug the Company or other employees about wages· or working conditions. The Board put great weight upon the initial discharge, emphasizing that when Irwin was rehired he was told to keep his mouth shut, thus inferring that these admonishments restrained concerted activities of employees. Company officials testified that while Irwin was first discharged because of his absenteeism, they did acknowledge that Irwin had also "bugged" other employees by expressing his discontent concerning wages and working conditions. An employee who "bugs" management for higher wages and better working conditions and who speaks with fellow employees on the job relative thereto, is not engaged in the "concerted activity" of employees for mutual aid and protection prescribed by the Act. National Labor Relations Board v. Avondale Mills, 242 F.2d 669 (5th Cir. 1957), aff'd 357 U.S. 357, 78 S.Ct. 1268, 2 L.Ed.2d 1383 (1958); Midland Steel Products Co. v. National Labor Relations Board, 113 F.2d 800 (6th Cir. 1940). Irwin's own testimony was that he had been "arbitrating" his wages with Company officials for some time and that "I wanted more than what they offered." His complaints were directed exclusively to his own wages, hours and working conditions. It is in this context that the Board inferred that when Irwin was rehired, the admonishments given him by Company officials to stay at his machine and not to wander around the plant talking wages and working conditions with other employees, constituted a threat of discharge should Irwin participate in concerted union activities. Company officials Wills and Hays testified that these admonishments applied to working hours only. The Board's brief states otherwise. This inference is not supported by the record.

The Board determined that Irwin's first discharge was relevant background evidence "against which to assess subsequent remarks made by Company officials as well as to determine the Company's motivation" at the time of Irwin's second discharge on October 17, 1968. There is no direct evidence that any Company official had knowledge of Irwin's activities that day relating to distribution of union authorization cards to employees. Although unsupported by direct evidence, the Board nevertheless contends that there was substantial evidence supporting its finding that Irwin was fired that day because of his union activities in that: (a) Irwin's solicitation of authorization cards on October 17th was "unlikely to have escaped" the Company's attention notwithstanding uncontroverted testimony to the contrary; (b) the Company's contention that Irwin was discharged because of his absences from his machine "is pretextual in nature" notwithstanding Company officials' testimony—corroborated by Irwin himself—that Irwin had received one written and numerous oral warnings even before October 17th that he would be discharged if he did not remain at his planer machine; and (c) the circumstances surrounding the first discharge "shed light" on the real reason for the second discharge in that the "same thing" relates to Irwin's "concerted activity" rather than his absenteeism from his machine.

█ The Board dwelt on Irwin's many absences from his machine prior to his discharge on October 17th. It found that Irwin had good cause to be absent from his machine that day and that plant superintendent Allen was wrong in finding fault with Irwin in this respect. Even so, this record does not reflect bad faith on the part of the Company and absent a showing of anti-union motivation, an employer may discharge an employee for a good reason, a bad reason, or no reason at all. Nation-

al Labor Relations Board v. O. A. Fuller Super Markets, Inc., 374 F.2d 197 (5th Cir. 1967).

In its brief the Board insists that the Company restricted the union activities of its employees during both working and non-working hours. Without any direct evidence, the Board relies upon the "small plant" doctrine to raise such an inference, citing American Sanitary Products Co. v. National Labor Relations Board, 382 F.2d 53 (10th Cir. 1967) and National Labor Relations Board v. Mid State Sportswear, Inc., 412 F.2d 537 (5th Cir. 1969). Those decisions do not support the application of the "small plant" doctrine to the facts of this case. In *American Sanitary Products, supra,* the union organizing activities lasted three full days. During this period the employer interviewed four of its employees about union activities. And in *Mid States Sportswear, supra,* the solicitation for union authorization cards involved unusual activity between the machine operators both inside and outside of the plant. Furthermore, one of the plant supervisors heard rumors of union activity. In the instant case, the facts and circumstances are at least just as consistent with lack of knowledge as they are with possession of such knowledge. See National Labor Relations Board v. Falls City Creamery Co., 207 F.2d 820 (8th Cir. 1953).

▪ Testimony which requires the pyramiding of so many inferences in order to support a finding of discrimination cannot be a substitute for substantial evidence essential to support the Board's Order. The substantial evidence rule is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which lends equal support to inconsistent inferences. National Labor Relations Board v. Shen-Valley Meat Packers, 211 F.2d 289 (4th Cir. 1954); National Labor Relations Board v. Falls City Creamery Co., *supra.*

▪ Unlike the logical reasoning set forth in National Labor Relations Board

v. Mid State Sportswear, Inc., *supra,* upholding the reasonable inferences of the Examiner and the Board, here the "small plant" doctrine is resorted to notwithstanding uncontradicted evidence that: (a) the Company had given Irwin many advanced warnings that he would be discharged if he continued to leave his machine; (b) Irwin left his machine almost a dozen times prior to his discharge on October 17th; and (c) the Company did not in anywise vacillate as to the reason for his discharge—leaving his machine—and of the concern relative thereto in view of the fact that the planer machine was the most expensive piece of machinery in the plant, the output of which was critical to the balance of the plant production.

Larry Schliuning, who worked as a machinist and a planer operator, testified that he did not recall ever being criticized by Company officials for leaving his machine. Robert Allen, plant superintendent, testified that Irwin was the only planer operator who created problems by consistent absenteeism from his machine.

We deny enforcement of the Board's Order.