907 F.2d 1343
 134 L.R.R.M. (BNA) 2686, 59 USLW 2064,
115 Lab.Cas. P 10,171
 HOLO-KROME COMPANY, Petitioner-Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Cross-Petitioner,
and
International Union, United Automobile, Aerospace and
Agricultural Implement Workers of America (UAW),
Local 376, Intervenors.
 Nos. 1071, 1216, Dockets 89-4148, 90-4008.
 United States Court of Appeals,
Second Circuit.
 Argued March 21, 1990.
Decided July 9, 1990.
 
 Burton Kainen, Hartford, Conn. (Diana Garfield, Siegel, O'Connor, Schiff, Zangari & Kainen, Hartford, Conn., on the brief), for petitioner-cross-respondent.
 Marilyn O'Rourke Athens, Washington, D.C. (Howard H. Perlstein, Supervisory Atty., Jerry M. Hunter, Robert E. Allen, Asoc. Gen. Counsel, Aileen A. Armstrong, Deputy Assoc. Gen. Counsel, N.L.R.B., Washington, D.C., on the brief), for respondent-cross-petitioner.
 Before: TIMBERS, NEWMAN, and PRATT, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This case is before the Court upon the petition of Holo-Krome Company to review and set aside an amended order of the National Labor Relations Board issued on September 20, 1989. 293 NLRB No. 65. The Board has filed a cross-petition for enforcement of its order requiring Holo-Krome to reinstate with backpay two employees, Guiseppe Pace and John Rutkauski, and to cease and desist from violating subsections 8(a)(1), (3), and (4) of the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(1), (3), and (4) (1988) (as amended). Because the Board improperly inferred anti-union animus from statements made by Company officials opposing unionization of the employees--statements that are protected under the Act--we deny enforcement and remand to the Board for reconsideration consistent with this opinion.
 
 Background
 
 2
 In the spring of 1985, Local 376 of the UAW conducted an organizing campaign at Holo-Krome's West Hartford, Connecticut, plant, which manufactures industrial fasteners. Pace and Rutkauski, who had worked for Holo-Krome for eleven and eight years, respectively, actively supported the Union in the election, which the Union ultimately lost. Soon thereafter, Holo-Krome laid off several of its 170 employees, including Pace and Rutkauski. This layoff became the subject of the Union's April 1986 allegation that Holo-Krome had singled out pro-union employees for layoff and had failed to recall them. The Board's regional office investigated the charge, found that the layoffs had been based on legitimate economic reasons and had been implemented consistent with a preexisting policy, and refused to issue a complaint. The regional office also found that Holo-Krome had no policy of recalling former employees and that neither Pace nor Rutkauski had reapplied for employment since the layoff date.
 
 
 3
 In July, Holo-Krome advertised new openings at the plant, and Pace and Rutkauski both applied. Neither was chosen. The Union then filed a new charge against the Company. This time the Board's regional office issued a complaint alleging discriminatory refusal to hire, in violation of 29 U.S.C. 158(a). An administrative law judge dismissed the complaint, finding that the General Counsel had failed to make a prima facie showing, see Wright Line, a Division of Wright Line, Inc., 251 NLRB No. 150, 105 LRRM 1169, 1175 (1980), enf'd, 662 F.2d 899 (1st Cir.1981), cert. denied, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982), that the Company's refusal to rehire was motivated by anti-union animus or by the employees' exercise of protected rights during the 1985 union organizing effort. On review, the Board disagreed, concluding that a prima facie case of unlawful motivation was established by Holo-Krome's consistent opposition to union organization, by instances of post-election hostility toward Pace and Rutkauski on the part of certain managers, and by irregularities in the Company's methods of filling new positions once Pace or Rutkauski had applied for those jobs. The Board rejected Holo-Krome's claim that it would have declined to rehire either employee even in the absence of their prior union activities. See NLRB v. Transportation Management Corp., 462 U.S. 393, 400-03, 103 S.Ct. 2469, 2473-75, 76 L.Ed.2d 667 (1983); Wright Line, supra. The Board's amended order directs Holo-Krome to offer employment and backpay to Pace and to award backpay to Rutkauski, who was ultimately rehired.[1]
 
 Discussion
 
 4
 On appeal, the parties dispute whether the Board's finding of unlawful motivation is supported by "substantial evidence on the record considered as a whole," 29 U.S.C. Sec. 160(e). The Board directs our attention chiefly to a number of pointed conversations between Pace or Rutkauski and certain Holo-Krome managers and to several instances in which the Company either withdrew an advertised job opening or declined to select either former employee for an available position.
 
 
 5
 Before assessing the sufficiency of the record, however, we must consider Holo-Krome's contention that the Board impermissibly relied on the Company's opposition to unionization in 1985 as part of the basis for attributing anti-union motivation to Holo-Krome's 1986 actions. This reliance, the Company contends, violated section 8(c) of the Act, which provides that:
 
 
 6
 The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.
 
 
 7
 29 U.S.C. Sec. 158(c). The Board has interpreted this provision to mean that although an employer's statements opposing union organization but lacking threat or promise cannot, by themselves, constitute an unfair labor practice, they may nonetheless serve as evidence for a finding of unlawful anti-union animus. See Sun Hardware Co., 173 NLRB 973 n. 1 (1968), enf'd, 422 F.2d 1296 (9th Cir.1970) (per curiam); General Battery Corp., 241 NLRB 1166, 1169 (1979). In this case, a majority of the Board's three-member panel concluded that the Company's statements expressing opposition to the Union during the 1985 election were permissible evidence, along with other facts, for inferring anti-union animus as a motivation for Holo-Krome's refusal to hire Pace and Rutkauski in 1986. The third member of the panel explicitly disclaimed reliance on the Company's 1985 election position as a basis for finding anti-union motivation in its 1986 hiring decisions. See 293 NLRB No. 65, slip op. at 6 n. 6.
 
 
 8
 It is clear that "an employer's free speech right to communicate his views to his employees is firmly established and cannot be infringed by a union or the Board," NLRB v. Gissel Packing Co., 395 U.S. 575, 617, 89 S.Ct. 1918, 1941, 23 L.Ed.2d 547 (1969); see also NLRB v. Virginia Electric & Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348 (1941); NLRB v. American Tube Bending Co., 134 F.2d 993 (2d Cir.), cert. denied, 320 U.S. 768, 64 S.Ct. 84, 88 L.Ed. 459 (1943). Although the Supreme Court has noted that section 8(c) "implements" the First Amendment, Gissel Packing Co., 395 U.S. at 617, 89 S.Ct. at 1941, the Court has not considered the precise meaning of section 8(c)'s prohibition against relying on non-coercive statements as "evidence of an unfair labor practice." In NLRB v. Pittsburgh Steamship Co., 340 U.S. 498, 71 S.Ct. 453, 95 L.Ed. 479 (1951), the Court held that an employer's letters to employees on the eve of a union election were not substantial evidence of an unfair labor practice, but the Court "express[ed] no opinion on the possible effect of Sec. 8(c)" on the inferences permissibly drawn from those letters. Id. at 501 n. *, 71 S.Ct. at 455 n. *. Similarly, while Chief Justice Warren's concurring opinion in NLRB v. United Steelworkers, 357 U.S. 357, 365, 78 S.Ct. 1268, 1273, 2 L.Ed.2d 1383 (1958), concluded that non-coercive expressions of opinion could not be used to show that an employer's enforcement of a no-distribution rule was unfair, id. at 370, 78 S.Ct. at 1275, the majority found the Board's order sustainable on other grounds.
 
 
 9
 Several circuits have construed section 8(c) as barring the "use [of] protected expression to build a case" against an employer or union, NLRB v. Eastern Smelting & Refining Corp., 598 F.2d 666, 670 (1st Cir.1979), and have found substantial evidence lacking where the Board makes reference to a company's lawful expression of opposition to the union as a basis for concluding that subsequent acts or statements were unlawful. See Florida Steel Corp. v. NLRB, 587 F.2d 735, 750-54 (5th Cir.1979); NLRB v. Rockwell Manufacturing Co., 271 F.2d 109, 118-19 (3d Cir.1959); Pittsburgh Steamship Co. v. NLRB, 180 F.2d 731, 735 (6th Cir.1950) ("Sec. 8(c) of the Taft-Hartley Act was specifically intended to prevent the Board from using unrelated non-coercive expressions of opinion on union matters as evidence of a general course of unfair labor conduct"), aff'd, 340 U.S. 498, 71 S.Ct. 453, 95 L.Ed. 479 (1951).
 
 
 10
 Other circuits, however, have permitted the Board to make limited references to statements protected by section 8(c) in marshaling a case against the employer. Where an employer had "made no bones about its opposition to the Union," the Court in Hendrix Manufacturing Co. v. NLRB, 321 F.2d 100 (5th Cir.1963), permitted the Board to consider such views as "background," both in order to decipher the motivations for management's conduct and in judging how employees reasonably would interpret the company's acts. See id. at 103-04. The Court in International Union, United Automobile, Aerospace & Agricultural Implement Workers v. NLRB, 363 F.2d 702 (D.C.Cir.), cert. denied, 385 U.S. 973, 87 S.Ct. 510, 17 L.Ed.2d 436 (1966), concluded that section 8(c) did not bar focusing upon pre-election speeches, lawful in themselves, in order "to draw the background of the controversy and place other nonverbal acts in proper perspective." Id. at 707. In the Fourth Circuit's view, see Darlington Manufacturing Co. v. NLRB, 397 F.2d 760 (4th Cir.1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969), section 8(c) does not bar consideration of statements that amount to "directions" or "instructions" or statements considered for the limited purpose of elucidating an employer's apprehensions or motivations. Id. at 768-69.
 
 
 11
 In this case, the question of section 8(c)'s application is presented somewhat abstractly because the record is sparse as to the manner in which Holo-Krome expressed its opposition to the Union. At the ALJ hearing, Holo-Krome conceded that it had "expressed to its employees the view that it preferred that its employees not select UAW Local 376 as their collective bargaining representative," and the general counsel for the Board stipulated that there were no "violations of Section 8(a)(1) occurring in the course of [Holo-Krome's] expressing those views." Pursuant to this stipulation, the ALJ found that Holo-Krome had not sought to restrain or coerce its employees with regard to their choice of representative. Nevertheless, in reversing, the Board found that the ALJ had failed to consider "significant evidence demonstrating [Holo-Krome's] animus," including the fact that the Company "made known its opposition to union representation during the organizing campaign." Slip Op. at 1345. We believe that this reliance on protected statements to support a finding of unlawful, anti-union animus violated the congressional command that noncoercive expressions of views, argument, or opinion shall not be "evidence of an unfair labor practice."
 
 
 12
 Both the House and Senate precursors to the Taft-Hartley Act included provisions guaranteeing employers and unions "the full exercise of the right of free speech," though expressing the protection in different terms. H.R.Rep. No. 245, 80th Cong., 1st Sess., at 6 (1947), reprinted in 1 NLRB, Legislative History of the Labor Management Relations Act, 1947, at 297 (1948) (hereinafter "Legislative History"). Had the Senate version been adopted, the Board's view of section 8(c) might be more persuasive. As passed by the Senate, section 8(c) provided:
 
 
 13
 The Board shall not base any finding of unfair labor practice upon any statement of views or arguments, either written or oral, if such statement contains under all the circumstances no threat, express or implied, of reprisal or force, or offer, express or implied, of benefit: Provided, That no language or provision of this section is intended to nor shall it be construed or administered so as to abridge or interfere with the right of either employers or employees to freedom of speech as guaranteed by the first amendment to the Constitution of the United States.
 
 
 14
 H.R. 3020 (as passed by Senate), 80th Cong., 1st Sess. Sec. 8(c) (1947) (emphasis added), reprinted in Legislative History at 242. As clarified by the committee report, the Senate text, while not permitting the Board to "base" a finding on protected statements, did not go so far as to preclude the Board "from considering such statements as evidence." S.Rep. No. 105 at 24, reprinted in Legislative History at 430.
 
 
 15
 In contrast, section 8(d) of the House bill contained more preclusive language:(d) Notwithstanding any other provision of this section, the following shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act:
 
 
 16
 (1) Expressing any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, if it does not by its own terms threaten force or economic reprisal.
 
 
 17
 H.R. 3020 (as passed by House of Representatives), 80th Cong., 1st Sess. Sec. 8(d) (1947) (emphasis added), reprinted in Legislative History at 183. The broader reach of the phrase "evidence of" was not lost on the draftsman of the House minority report,[2] or on President Truman, who expressly criticized the House language in his veto message.[3]
 
 
 18
 Nonetheless, the House formulation emerged from the House-Senate conference on H.R. 3020 and was enacted as section 8(c) of the Taft-Hartley Act, over President Truman's veto. See H.R.Rep. No. 510, 80th Cong. 1st Sess., at 45, reprinted in Legislative History at 549, 1947 U.S.Code Cong.Serv. 1135, 1151. The accompanying conference report specifically noted that:
 
 
 19
 The practice which the Board has had in the past of using speeches and publications of employers concerning labor organizations and collective bargaining arrangements as evidence, no matter how irrelevant or immaterial, that some later act of the employer had an illegal purpose gave rise to the necessity for this change in the law.
 
 
 20
 Id. (emphasis added).
 
 
 21
 In striking the balance between protecting employees from coercion and permitting all opinions regarding labor disputes to be presented, Congress chose to prevent chilling lawful employer speech by preventing the Board from using anti-union statements, not independently prohibited by the Act, as evidence of unlawful motivation. Several other provisions of the 1947 amendments to the NLRA reflect a similar shift in favor of employer rights. See generally Cox, Some Aspects of the Labor Management Relations Act, 1947, 61 Harv.L.Rev. 1 (1947). Unlike Darlington, 397 F.2d at 768-69, this case does not require us to determine whether section 8(c) bars admission of an employer's "instructions" to management personnel, or collateral uses of an employer's expression of opinion, such as to impeach witnesses. Here, the Board referred to Holo-Krome's lawful expressions of opinion as a "basis for finding animus," and this is contrary to section 8(c).
 
 
 22
 The Board also referred to several other incidents in drawing the inference that Holo-Krome's refusal to rehire Pace or Rutkauski was attributable to their support for the Union. We express no view as to whether the Board's order is otherwise supported by substantial evidence. Rather than performing a Wright Line analysis of the Board's decision-making process to determine if it would have reached the same result had it not considered impermissible evidence, we remand for the Board to reconsider, without reference to Holo-Krome's protected statements, whether the refusal to rehire Pace and Rutkauski was based on anti-union motivation. See Manchester Health Center, Inc. v. NLRB, 861 F.2d 50 (2d Cir.1988).
 
 
 23
 Two other matters require discussion. First, the Board's order requires Holo-Krome to award backpay to Rutkauski from the date he would have been employed "until the date of his reemployment on January 19, 1989." The Board now concedes that this portion of its order is in error, since Rutkauski was rehired on January 19, 1987. On remand, if the Board reaffirms its findings with respect to Rutkauski, it should modify its order accordingly. Second, the parties dispute whether or not Holo-Krome still has an obligation to offer reemployment to Pace. The ALJ found that in January 1987, Holo-Krome contacted Pace about a job opening, that Pace failed to respond to this offer, and that Pace's subsequent explanations for not contacting the company were not credible. Holo-Krome contends that whatever duty it had to offer employment to Pace and to award backpay ended on the date he constructively rejected the Company's offer. The Board, however, declined to rule on the ALJ's findings, asserting that its practice is to consider the specifics of backpay and reinstatement at the compliance stage of its proceedings, following appellate review of liability determinations.
 
 
 24
 The Board is correct that Congress has vested in the Board primary responsibility for devising remedies for undoing the effects of unfair labor practices and preventing future violations of the Act. See Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 898-99, 104 S.Ct. 2803, 2812-13, 81 L.Ed.2d 732 (1984); NLRB v. Local 3, International Brotherhood of Electrical Workers, 730 F.2d 870, 879 (2d Cir.1984). However, the Board's decision to defer ruling on whether Holo-Krome has met an obligation (if it has one) to offer reemployment to Pace is less a choice of remedy than of procedure. Moreover, it is a choice that necessitates piecemeal review by this Court and continues to leave both Pace and Holo-Krome uncertain as to the former's right to be offered reemployment. Here the Board has not merely left for the compliance phase the "specific calculations as to the amounts of backpay," Sure-Tan, Inc. v. NLRB, 467 U.S. at 902, 104 S.Ct. at 2814, but also determination of whether the employer still has a duty to offer reemployment. The Board accepted the ALJ's findings as to the rehiring of Rutkauski and has before it his findings as to the circumstances surrounding the January 1986 offer to Pace. Since we remand for the Board to reconsider the record consistent with section 8(c), we direct the Board, in the event that it finds an obligation to rehire Pace, to determine whether the Company met that obligation.
 
 
 25
 Holo-Krome's petition to set aside the Board's September 20, 1989, order is granted. The Board's cross-petition for enforcement is denied. The case is remanded to the Board for reconsideration consistent with this opinion.
 
 
 
 [1]
 The Board's initial order directed the Company to reinstate Pace and Rutkauski to their former positions, with backpay. However, since the original layoff was found to be lawful, the amended order directs Holo-Krome to make a job offer and compute backpay with reference to positions for which Pace and Rutkauski were qualified and in which they would have been employed but for anti-union bias against them
 
 
 [2]
 See H.R.Rep. No. 245, 80th Cong., 1st Sess., at 84, reprinted in Legislative History at 375:
 By saying that statements are not to be considered as evidence, they [the majority] insist that the Board and the courts close their eyes to the plain implications of speech and disregard clear and probative evidence. In no field of the law are a man's statements excluded as evidence of illegal intention.
 
 
 [3]
 See 93 Cong.Rec. 7487 (1947) ("The bill would introduce a unique handicap, unknown in ordinary law, upon the use of statements as evidence of unfair labor practices. An antiunion statement by an employer, for example, could not be considered as evidence of motive, unless it contained an explicit threat of reprisal or force or promise of benefit.")