## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## HOLLYWOOD BRANDS, INC., a Minnesota corporation, Respondent.

### No. 16414.

United States Court of Appeals Seventh Circuit.

July 17, 1968.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy Sherman, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Vivian Asplund, Atty., N. L. R. B., for petitioner.

Arthur R. Donovan, Harry P. Dees, Joseph A. Yocum, Evansville, Ind., for respondent; Kahn, Dees, Donovan & Kahn, Evansville, Ind., of counsel.

Before SCHNACKENBERG, KILEY and CUMMINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

National Labor Relations Board, petitioner, requests enforcement of its order requiring Hollywood Brands, Inc., a Minnesota corporation, respondent, to bargain collectively with a union[1] as the exclusive bargaining representative of the production and maintenance employees in its business at Centralia, Illinois.[2]

The order is based in part upon findings made in a representation proceeding under § 9 of the National Labor Relations Act, 29 U.S.C. § 151 et seq. A secret ballot election was held among respondent's employees, who chose the union to represent them. Timely objections to alleged union conduct affecting the election results were filed with the Board, which, upon notice to the parties, held an investigation. The objections were then

---

1. Chauffeurs and Helpers Local No. 50, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

2. The Board's decision and order are reported at 163 NLRB No. 107.

overruled by the Board, which certified the union.

Thereafter, a complaint, initiated by the union, was issued, alleging that respondent refused to bargain on request, in violation of § 8(a) (5) and (1) of the Act. Respondent's answer denied that the union was the exclusive bargaining representative of its employees and the unfair labor practices. Pursuant to existing Board regulations (29 C.F.R. § 102.24), an order to show cause why disposition should not be made on the pleadings was issued by a trial examiner, who, after considering all responses to the motion, found that, according to established Board policy, no issues required a hearing. Accordingly, the examiner concluded that respondent had refused to bargain. The decision was affirmed by the Board which ordered respondent to cease and desist from engaging in the unfair labor practices found, to bargain with the union, and to post appropriate notices.

Respondent's objections to union conduct prior to the representation election raise the sole issue whether the Board properly found the charged violation. Respondent's counsel has argued here that the facts entitle it to an order setting aside the election or a hearing as to the issues raised by its objections.

The objections were made to two statements in a union circular distributed by the union the night before the election. One statement read:

### DON'T DO IT CLAYTON!

"There is a story going the rounds that Clayton Martoccio [the Company's vice president] is planning some drastic changes at Hollywood Brands. One of them we are told, (and we hope it is untrue), is that he plans to get rid of many of the older employees by instituting a series of physical examinations that a lot of workers would be unable to pass. This procedure has been used successfully elsewhere. It is used to get rid of oldtimers and those the company just doesn't want for one reason or another.

"The Union will bitterly oppose any such plan proposed or even contemplated by management. The seniority clause in the union contract would protect employees with years of loyal service and see that they were allowed to continue on the job as long as they could perform their work reasonably well.

"JOB SECURITY is the number one aim of the Teamsters for all its members. We urge you to gain real job security by voting 'Yes.' You need the support of the world's strongest union.

### YOU CAN'T BARGAIN ALONE."

As to this statement, respondent charged the union with "attempting to create an atmosphere of fear and coercion" because it stated "not only an extremely false assertion as though it were a statement of fact, but in addition in a very pointed way threatens the Employer's 'older employees' with discharge if Petitioner did not win the election." Further, respondent asserts that the statement enfetters the employees' free choice of representatives, particularly the older employees who would be unable to rationally evaluate the statement's truth.

Another statement in the circular read:

"Mr. Martoccio, the Teamsters do not have to know how to make candy to help your employees. The Teamsters have over a hundred thousand contracts with employers around the country. Most of them used the same 'line.' When we organized 5,000 employees in the Sikorsky Helicopter Company a few years ago, they said 'What can Mr. Hoffa do for you, he doesn't know how to make a helicopter.'

"What Mr. Hoffa has, Mr. Martoccio, is the power to ask the public not to buy your product and to see that it does not get delivered. This is the only power a boss seems to understand. The Stamper Company a few years ago began a fight to keep their employees

from joining the Teamsters. Mr. Hoffa had hundreds of Teamster members stand in front of the big chain stores and ask the public not to buy 'Banquet' brand frozen foods. Pretty soon the store began throwing out their products. They did not want people giving out leaflets about anything they sold. Immediately Mr. Stamper got in touch with the Teamsters and signed a contract covering some 2,500 of his employees. He did this because he got hurt in the pocketbook. This can happen to candy bars too, Mr. Martoccio. Money isn't everything Mr. Martoccio, 'you can't take it with you.' "

As to this statement, respondent objected to the threat that if it did not agree to union demands, not only would it be hurt, but the employees' jobs would be severely affected, hinting at unlawful secondary boycotts and compelling the public not to buy its products.

The Board's investigation established first, that a rumor of unknown origin was circulated among the employees immediately prior to the election, and second, that is could not conclude that the employees were unable to evaluate the union's report of the rumor. Also established was the fact that respondent sent a number of letters to employees discussing strikes and their consequences which stressed the union's only recourse was to strike if its demands were rejected.

■ 1. This court has stated the rule, recognized by respondent, which is applicable here. Thus, in N. L. R. B. v. National Survey Service, Inc., 7 Cir., 361 F. 2d 199, 208 (1966), we said allegations in objections must raise substantial and material issues of fact. If respondent has failed to present sufficient evidence to raise substantial and material issues of fact which warrant a hearing or an order setting aside the election, its conclusion is without merit, and no evidentiary hearing is required. Macomb Pottery Company v. National Labor Relations Board, 7 Cir., 376 F.2d 450, 452 (1967).

■ We have examined the statement regarding the rumor and hold respond-

ent's conclusion to be unwarranted. It has not alleged that the union started the rumor. Thus, while the conclusion may be true, according to facts or other information of which it alone is privy, such facts must be contained in its objections. Denial of the rumor and the conclusion that the union's campaign " * * * reeks of intimidation and coercion amounting to terror" raise no issue of fact because on its face the statement is mere campaign material. Real concern for the origin of the rumor or, as to the "boycott" statement, the union's implication in that statement requires respondent to produce facts which when presented warrant a hearing. See N.L. R.B. v. National Survey Service, Inc., supra, where, in a like situation we said:

"In the absence of some showing of reasonable effort and failure to obtain evidence, or a convincing demonstration that such efforts would necessarily involve risk of illegal action or inequitable or insuperable difficulty, we hold that, under the facts in this case, the failure to provide a hearing on allegations which do not raise substantial and material issues of fact was not fundamentally unfair."

■ 2. Respondent charges that the plain import of the union statement, that it has the power to enforce its demands, threatens an unlawful secondary boycott, were the respondent to win the election. We agree with the Board, that it does not. Here, both union and respondent stipulated that an election would determine whether its employees would be represented by the union. Picketing by the union *were it to lose the election* is a false premise. That part of the statement—"to see that it does not get delivered"—alone might imply coercion and threats of violence. However, here, we should impute no wrongdoing if there is an equally lawful construction. Actually, the union's illustration of its power, repels such a conclusion, since peaceful secondary picketing of retail stores directed solely toward appealing to consumers to refrain from buying the primary employer's product is lawful. In

N.L.R.B. v. Fruit and Vegetable Packers, 377 U.S. 58 at 63–64, 84 S.Ct. 1063, at 1066, 12 L.Ed.2d 129 (1964) the Supreme Court stated:

"* * * the legislative history * * reflects the difference between such conduct [secondary boycotts] and peaceful picketing at the secondary site directed only at the struck product. In the latter case, the union's appeal to the public is confined to its dispute with the primary employer, since the public is not asked to withhold its patronage from the secondary employer, but only to boycott the primary employer's goods. On the other hand, a union appeal to the public at the secondary site not to trade at all with the secondary employer goes beyond the goods of the primary employer, and seeks the public's assistance in forcing the secondary employer to cooperate with the union in its primary dispute."

Respondent further demonstrates this distinction with respect to its case in describing union activity following the union's failure to bargain, by concluding: "* * * they [the union] have made their threat and for some months past have been trying to carry it out." [3]

Thus, the Board's rejection of these objections and denial of a hearing did not deny respondent due process of law. Accordingly, absent any evidence to the contrary, the Board's order will be enforced.

Order enforced.

3. In its brief, at p. 70, *dehors* the record, respondent states:
"* * * It is interesting to note that the union in this case, since the time of the above affidavit, has through its international headquarters taken, among other things, the following action: (1) Under Mr. Hoffa's signature sent approximately 16,000 letters to Respondent's jobbers and wholesalers asking them not to purchase *our product*; (2) Circulated leaflets and other handouts at shopping centers; (3) Published ads in its

international magazine and in the press asking its membership and the public not to buy *our products*; (4) Made direct and indirect assertions to customers of Respondent that they had 'better not' handle or purchase *our product*; (5) Caused customers of Respondent through the above to discontinue purchase of *Respondent's product* until things get 'ironed out' particularly in the part of the country where union power is great, i. e., urban areas; * * *." (Italics added for emphasis.)