**NATIONAL STEEL CORPORATION, GREAT LAKES STEEL DIVISION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 19131.**

United States Court of Appeals Sixth Circuit.

Sept. 3, 1969.

---

Donald W. Ebbert, Pittsburgh, Pa., James B. Hecht, Michael Yukevich, Jr., Thorp, Reed & Armstrong, Pittsburgh, Pa., on brief; Kirby L. Wilson, III, River Rouge, Mich., of counsel, for petitioner.

Janet C. McCaa, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Peter Ames Eveleth, Attorneys, N. L. R. B., Washington, D. C., on brief, for respondent.

Before PECK, McCREE and COMBS, Circuit Judges.

COMBS, Circuit Judge.

This case is before us on the petition of National Steel Corporation, Great Lakes Steel Division to review and set aside a decision and order of the National Labor Relations Board. The Board cross-petitions for enforcement of its order. 173 NLRB No. 65. The Board adopted the Trial Examiner's finding that the company had violated Section

8(a) (1) of the Act, 29 U.S.C. § 158(a) (1), by maintaining a no-distribution rule prohibiting employees from distributing union literature during non-working time in non-working areas of the plant. The Board's order directs the company to cease and desist from its unlawful activities, to notify the union that it has rescinded its no-distribution rule as it relates to employees, and to post the usual notices.[1]

The facts are for the most part undisputed. The company engages in the manufacture, sale, and distribution of steel and related products at five separate facilities located in Ecrose and River Rouge, Michigan. In March, 1967, the United Steelworkers of America, AFL–CIO, began its third attempt to organize approximately 550 clerical employees stationed at the company's various work locations. As a result, the parties entered into a stipulation for consent election and, on June 1, the company conformed with the rule of Excelsior Underwear, Inc., 156 NLRB 1236 (1966), which requires an employer to furnish the union a list of the names and addresses of employees eligible to vote. The union lost the election held on June 28 by a vote of 280–213.

In the period preceding the election, both the union and the company campaigned vigorously. The only unlawful conduct found by the Board to have arisen out of this campaign relates to the company's long-standing, but unwritten, rule prohibiting distribution of literature on plant property. The no-distribution rule came into play in connection with the efforts of employee and non-employee union organizers to distribute union literature on company parking lots during non-working hours. This occurred on various dates between March 10 and June 26, 1967, primarily at two parking lots located adjacent to the company's Michigan Steel Plant and its general office building. The parking lots are connected by private company roads to the public highway a fifth to a quarter of a mile away.

On most, if not all, of these occasions, the employees distributing leaflets were confronted by plant guards who, after informing them of the company rule, asked whether permission had been obtained to distribute the literature. The guards made notations of those participating in the distribution activities and included their names in written reports submitted to their superiors. No force was exerted whenever the employees did not heed the guards' warning. A union representative testified that, after the guards took down names a second time, he had difficulty recruiting employees to continue the distribution activities.

Although the guards unquestionably told the employees to stop distribution on company premises, there is some evidence that the employees may have been told they could distribute where the company roads intersected with the public thoroughfare. A company official admitted on cross-examination that the rule applied to all areas of the plant property; he maintained, however, that it was strictly enforced only in those areas encompassing the plant entrances and parking lots. The only justification for the rule offered was the bare assertion of this official that it was adopted to prevent littering.

The union did have opportunity to present its side of the story through means other than distribution of literature. By mailing literature to the employees' homes, extensive use was made of the list provided by the company under *Excelsior*. In addition, several mass employee meetings were held, and there is evidence of limited use of the employer's in-plant mailing system. There is also an indication in the record that certain distributions may have been allowed by the company on its premises. For example, a company representative testi-

---

[1]. The Board also upheld the Trial Examiner's action in setting aside the election and ordering a new one, but this part of the order is not before us. NLRB v. International Brotherhood of Electrical Workers, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354 (1940).

fied that no attempt was made to restrict distribution of union cards in the plant cafeteria. However, the extent to which such activities were permitted is not clear.

The Trial Examiner found and the Board agreed that, by maintaining a rule against distribution of union literature by employees on parking lots and adjacent areas, the company restrained and coerced its employees in violation of Section 8(a) (1) of the Act. We hold that the Board's order should be enforced.

It is generally recognized that a rule prohibiting employees from distributing union literature on their own time and in non-working areas of the employer's property is presumptively invalid. Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). The question here is how may that presumption be rebutted. The company contends that, in passing upon the validity of a no-distribution rule, the Board must consider the availability of other means of communication between the employees and the union, including the union's access to the list of names and addresses of employees which the company admittedly supplied in conformance with *Excelsior*. The Board takes the position that evidence of other means of communication is irrelevant to determination of the validity of a no-distribution rule as it relates to employees; that only evidence of circumstances necessitating the rule in the interest of plant production and discipline will overcome the presumption of invalidity.

The Board relies principally on Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982 (1945). Prior to that decision, the Board had held that a rule prohibiting union distribution by an employee outside of working hours, although on company property, would be presumed to be an unreasonable impediment to self-organization "in the absence of evidence that special circumstances make the rule necessary in order to maintain production or discipline." Peyton Packing Co., 49 NLRB 828

(1943). When the rule of *Peyton* was challenged in Republic Aviation, the Supreme Court upheld the Board's decision that the no-distribution rule was violative of Section 8(a) (1). This position was reaffirmed in N. L. R. B. v. Babcock & Wilcox Co., 351 U.S. 105, 113, 76 S.Ct. 679, 100 L.Ed. 975 (1956).

These cases establish that the availability of other avenues of communication is generally irrelevant in determining the validity of a no-distribution rule as applied to employees. This is the position taken by a majority of the circuits which have passed on the question. Republic Aluminum Company v. N. L. R. B., 394 F.2d 405 (5th Cir. 1968); United Steelworkers of America AFL–CIO v. N. L. R. B., 393 F.2d 661 (D.C.Cir. 1968); N. L. R. B. v. United Aircraft Corp., 324 F.2d 128 (2nd Cir. 1963), cert. denied, 376 U.S. 951, 84 S.Ct. 969, 11 L.Ed.2d 971 (1964); Time-O-Matic, Inc. v. N. L. R. B., 264 F.2d 96 (7th Cir. 1959). See Korn Industries, Inc. v. N. L. R. B., 389 F.2d 117 (4th Cir. 1967). This is also the interpretation which was clearly foreshadowed by what this Court said in N. L. R. B. v. Challenge-Cook Brothers of Ohio, Inc., 374 F.2d 147, 153 (1967):

"The distinction between rules of law applicable to employees and non-employees 'is one of substance.'

\*　　\*　　\*　　\*　　\*　　\*

"These cases [*Babcock & Wilcox Co.*, and *Republic Aviation*] stand for the proposition that an employer cannot interfere with his employees' right to distribute union literature and solicit union interest among themselves on company property, without having a valid reason relating to the management, production or discipline of the plant."

We note, however, that the Third Circuit reached a different conclusion in N. L. R. B. v. Rockwell Manufacturing Co., 271 F.2d 109 (1959).

The company relies on language in N. L. R. B. v. United Steelworkers of America, 357 U.S. 357, 78 S.Ct. 1268, 2

L.Ed.2d 1383 (1958), to the effect that the existence or non-existence of alternative channels of communication is a consideration in determination of the validity of a no-distribution rule. The *Steelworkers* case involved an admittedly valid no-solicitation rule, the narrow question being whether an employer who engaged in anti-union solicitation could enforce against the union an otherwise valid no-solicitation rule. Under these circumstances, we do not believe that by such a passing reference the Court intended to modify its express pronouncement in *Republic Aviation* and *Babcock & Wilcox*. See Republic Aluminum Company v. N. L. R. B., supra.

There is no elaboration on the assertion that the rule was adopted to prevent littering, and there is no evidence that the restriction was necessary to maintain production or discipline. We note that the reason advanced by the company in *Republic Aviation* for the no-distribution rule was also to control littering. See N. L. R. B. v. United Aircraft Corp., supra.

The company emphasizes that, by virtue of the Board's decision in *Excelsior,* another avenue of communicating the union message has been opened up. We do not agree that, in view of this additional means of communication, it can no longer be presumed that a no-distribution rule on parking lots unreasonably impedes the rights of employees guaranteed by the Act. The availability of one channel of communication does not permit the employer to block other channels without good reason. What is involved is not only the union's desire to reach employees, but also the right of employees to communicate with other employees. Rules limiting an employee's use of his own time in non-working areas and subjecting his associations, expressions, and activities to company limitations clearly has a detrimental effect on any organizational campaign. This is especially true here where company guards wrote down the names of employees and submitted them to company officials. The existence of alternative

means of communication would not eliminate these damaging effects. Moreover, the no-distribution rule was in effect here in the months before the list was made available to the union. Thus, during this crucial period when the union was attempting to gather sufficient strength to make the showing necessary even to obtain the list under the rule of *Excelsior,* the company was engaging in conduct which would necessarily hamper the organizational freedom the Act seeks to achieve.

The Board's cross-petition for enforcement of its order is granted.