**DIAMOND SHAMROCK CO., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 18567.

United States Court of Appeals, Third Circuit.

Argued Feb. 2, 1971.

Decided May 11, 1971.

Harold Krieger, Krieger, Chodash & Politan, Jersey City, N. J. (Lewis C. Stanley, Jersey City, N. J., on the brief), for petitioner.

Lawrence H. Pelofsky, Atty., N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Atty., N. L. R. B., Washington, D. C., on the brief), for respondent.

Before McLAUGHLIN and VAN DUSEN, Circuit Judges, and HANNUM, District Judge.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case is before the court on a petition of the Diamond Shamrock Co. (Company) to review and set aside an order of the National Labor Relations Board (Board) issued on February 20, 1970.[1] The Board filed a cross-application for enforcement of its order. This court has jurisdiction under section 10 (f) of the National Labor Relations Act, 29 U.S.C. § 160(f) (1964).

This case presents the question whether an employer commits an unfair labor practice when it applies and enforces a non-discriminatory[2] rule barring off-duty employees[3] from all production areas and certain secured non-production areas of the plant, absent a showing of organizational need for access to those areas. Otherwise stated, the issue is whether the Board can order an employer to permit off-duty employees to have access to all non-production areas of the plant, including secured areas, for purposes of soliciting union support, absent a showing that without such access the organizing employees would have no reasonably adequate means of communicating with other employees.

The Company is engaged in the manufacture of chlorine, caustic soda, caustic potash, hydrogen, polyvinyl-chloride resins, and anhydrous caustic soda at its plant in Delaware City, Delaware. The plant property is divided into two parts, a part enclosed by a wire fence and a part outside the fence. Outside the fence is the Company's office building and a parking lot, where virtually all employees

1. 181 N.L.R.B. No. 43 (1970).

2. A non-discriminatory rule is a rule that was not formulated as a result of anti-union motives, and is not applied to discriminate against union activity. The Trial Examiner found that the rule at issue in this case is non-discriminatory, and the Board agreed.

3. The term "off-duty employees" is used to describe employees who are not on the shift for which they receive pay. The term "on-duty employees" will be used to describe employees who are on the shift for which they receive pay.

park. A walkway leads from the parking lot to the main gate, where there is a guard house manned by a security officer, and which is used by virtually all production and maintenance employees as a means of access to the production area of the plant. The no-access rule in question does not apply to any of these areas outside the fence. Inside the fence, the chief purpose of which is security, is the production area, as well as a change room building, which contains locker rooms, rooms for hanging work clothes to dry, shower rooms, toilets and lunchrooms. The no-access rule in question applies to all of these secured areas inside the fence.

The Company's no-access rule denies free access to the plant area *inside* the fence to off-duty employees, with the exception that it does not deny access to the plant area inside the fence to employees who are off-duty but are in the fenced area in connection with their work. That is, it does not deny access to the plant area inside the fence to employees who are there within thirty minutes of the beginning or end of their shift, in order to prepare for work or for returning home after work. The no-access rule does not deny free access to the plant area *outside* the fence to off-duty employees at any time. Thus the no-access rule is limited in operation to the area inside the fence, and

to off-duty, unwork-connected employees.[4]

The Company does not have a no-solicitation rule[5] or a no-distribution rule.[6] Employees are able to solicit and distribute on behalf of the union and otherwise engage in union activity at all times outside the fence. Inside the fence, on-duty employees[7] and off-duty employees present in connection with their work, in accordance with the no-access rule, are permitted to engage in union solicitation and distribution during non-work time[8] in all non-work areas. The lawfulness of the limitation on solicitation and other union activity, restricting it to non-work time in non-work areas, has not been challenged in this case. Only the validity of the no-access rule is at issue in this case.[9]

The General Counsel's complaint charged that the no-access rule and its application to prevent union solicitation inside the fenced area by off-duty, unwork-connected employees constituted an unfair labor practice within the meaning of section 8(a) (1) of the National Labor Relations Act. Section 8(a) (1), 29 U.S.C. § 158(a) (1) (1964), makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in section 7 of the Act.

4. The no-access rule of course bars non-employees from the areas inside the fence, but its application to non-employees is not challenged in this case.

5. A no-solicitation rule is a rule that bars solicitation on part or all of an employer's premises.

6. A no-distribution rule is a rule that bars distribution of leaflets or circulars on part or all of an employer's premises.

7. *See* note 3 *supra.*

8. The term "non-work time" is used to describe those periods during a shift when on-duty employees are on luncheon, rest, coffee, or similar breaks.

9. Three employees seeking to solicit on behalf of a union returned to the plant long after their shifts had ended and entered the area inside the fence. They were told to leave the area inside the fence, and were further told not to return to the area inside the fence during their off-duty time. They were not discharged for violating the no-access rule. The Board does not consider inquiry into the effects of the rule on opportunities of the employees to exercise their organization rights relevant, and challenges the validity of the rule insofar as employee organizers are concerned, rather than its application to off-duty employees in light of the facts of this case. The Board thus takes the position that the availability of other avenues of communication is irrelevant.

Section 7, 29 U.S.C. § 157 (1964), provides in relevant part:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, * * *

The Trial Examiner, in an extensive opinion, concluded that the Company had not engaged in unfair labor practices in violation of section 8(a) (1) of the Act. The Board adopted the factual findings of the Trial Examiner, but concluded that the no-access rule and its application to prevent union solicitation inside the fenced area by off-duty unwork-connected employees constituted unfair labor practices within the meaning of section 8(a) (1) of the Act. The Board therefore ordered the Company, *inter alia,* to cease and desist from "[a]pplying and enforcing at its Delaware City, Delaware, plant any rule which prohibits its employees from entering or returning to the premises of the plant during their non-working time to solicit union support in non-working areas of the plant."

In invalidating the no-access rule, insofar as it prevents off-duty, unwork-connected employees from engaging in union solicitation inside the fenced area, the Board relied primarily on its decision in Peyton Packing Co., 49 N.L.R.B. 828 (1943), enforced, 142 F.2d 1009 (5th Cir.), cert. denied, 323 U.S. 730, 65 S.Ct. 66, 89 L.Ed. 585 (1944). In *Peyton Packing* the Board stated:

> The Act, of course, does not prevent an employer from making and enforcing reasonable rules covering the conduct of employees on company time. Working time is for work. It is therefore within the province of an employer to promulgate and enforce a rule prohibiting union solicitation

during working hours. Such a rule must be presumed to be valid in the absence of evidence that it was adopted for a discriminatory purpose. It is no less true that time outside working hours, whether before or after work, or during luncheon or rest periods, is an employee's time to use as he wishes without unreasonable restraint, although the employee is on company property. It is therefore not within the province of an employer to promulgate and enforce a rule prohibiting union solicitation by an employee outside of working hours, although on company property. Such a rule must be presumed to be an unreasonable impediment to self-organization and therefore discriminatory in the absence of evidence that special circumstances make the rule necessary in order to maintain production or discipline.

49 N.L.R.B. at 843–44.

This language from *Peyton Packing* was specifically approved by the Supreme Court in Republic Aviation Corp. v. NLRB, 324 U.S. 793, 804, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). The Board contends that the *Peyton Packing* presumption applies in this case. We cannot agree.

■ *Peyton Packing* involved a no-solicitation rule that barred union solicitation by employees on company premises during non-working time as well as during working time. *Republic Aviation* likewise involved no-solicitation rules [10] that barred solicitation by employees on company premises during non-working time as well as during working time. The rules in those cases operated to restrict the section 7 organization rights of employees, properly on company premises pursuant to the work relationship, during their non-working or free time, such as lunch time and break time. The challenged rule in the instant case does *not* bar solicitation on company premises.

10. The Court, in its single opinion in Republic Aviation, reviewed two Court of Appeals decisions, Republic Aviation Corp. v. NLRB, 142 F.2d 193 (2d Cir. 1944), and LeTourneau Co. of Georgia v. NLRB, 143 F.2d 67 (5th Cir. 1944).

Employees of the Company are free to solicit on behalf of the union during their on-duty non-working time on all company premises, and are free to solicit on behalf of the union during their off-duty time on all company premises outside the fence. The challenged rule simply operates to bar off-duty employees from returning to or remaining on the plant premises *inside* the fence after working hours. The Board has cited no case where the *Peyton Packing* presumption, now almost 28 years old, has been applied to invalidate a no-access rule like the one involved in this case.

The no-solicitation rules in *Peyton Packing* and *Republic Aviation* were directed toward on-duty employees, as well as off-duty employees, and operated to prevent solicitation in all parts of the company premises, during non-working as well as working time. The no-access rule in the instant case is directed only toward off-duty employees, and operates to bar them from only a part of the Company premises. Because the no-solicitation rules in *Peyton Packing* and *Republic Aviation* were directed toward on-duty employees lawfully and properly on company premises pursuant to the work relationship, and because the no-access rule in the instant case is directed only toward off-duty employees not lawfully and properly on Company premises pursuant to the work relationship, we cannot agree with the Board's argument that the *Peyton Packing* presumption and its approval in *Republic Aviation* end our inquiry. In short, quite different considerations are presented by the instant case.

In *Peyton Packing* and *Republic Aviation,* there was little reason for concern about the employers' private property rights, for the employees affected by the no-solicitation rules were lawfully and properly on the employers' premises pursuant to the work relationship. What was at stake in those cases was the proper "adjustment between the undisputed right of self-organization assured to employees under the [National Labor Relations] Act and the equally undisputed right of employers to maintain discipline in their establishments." [11] In the instant case more is at stake than the Company's right to maintain discipline in its plant. The Company's private property rights are involved, for the effect of the Board's decision is to require the Company to open a part of its premises, to which it could otherwise lawfully deny access, to off-duty employees for purposes of union solicitation. The Board in effect requires the Company, which does not bar off-duty employees from the parts of its premises outside the fence, to provide a platform for off-duty employees supporting, and presumably those opposing, unionization, without a showing that other reasonably adequate avenues of communication are unavailable.

I.

In NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), the Supreme Court was called upon to consider the proper adjustment between the employees' section 7 rights and the employer's private property rights. Consideration of private property rights was necessary in *Babcock & Wilcox* because the Board had held that application of a no-distribution rule to prevent non-employee union organizers from distributing union literature on company-owned parking lots constituted an unfair labor practice in violation of section 8(a) (1) of the Act. In considering the appropriateness of the Board's adjustment of conflicting rights, the Court stated the following guiding principle:

> Organization rights are granted to workers by the same authority, the National Government, that preserves property rights. Accommodation between the two must be obtained with as little destruction of one as is consistent with the maintenance of the

11. Republic Aviation Corp. v. NLRB, 324 U.S. 793, 797–798, 65 S.Ct. 982, 985, 89 L.Ed. 1372 (1945).

other. The employer may not affirmatively interfere with organization; the union may not always insist that the employer aid organization. But when the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels, the right to exclude from property has been required to yield to the extent needed to permit communication of information on the right to organize.

351 U.S. at 112, 76 S.Ct. at 684.

*Babcock & Wilcox* did, of course, involve non-employees who were being denied access to company property, and the Court noted that the "distinction between rules of law applicable to employees and those applicable to non-employees * * * is one of substance." [12] The Court also noted that non-employee organizers' right of "access to company property is governed by a different consideration." [13] Similarly, we think that the rights of on-duty employees to access to the areas of the plant inside the fence are governed by different considerations from those governing the rights of off-duty employees to access to those areas. On-duty employees have permission to be there pursuant to the work relationship, while off-duty employees in this case were not accorded such permission. [14]

The Board must initially determine the proper adjustment between organization rights and property rights. As the Court noted in *Babcock & Wilcox,* "[i]ts rulings, when reached on findings of fact supported by substantial evidence on the record as a whole, should be sustained by the courts unless its conclusions rest on erroneous legal foundations." [15] The Board in this case, apparently for the first time, seeks to extend its *Peyton Packing* presumption to cover new factual situations. Although the Board argues that its approach in this case "fully takes into account the factor of alternative means of communication," there is no indication in its opinion that the Board has considered that factor or has considered the factual and legal differences between the application of a no-access rule to off-duty employees and the application of a no-solicitation rule to on-duty employees. Assuming, *arguendo,* that such factual differences need not be considered and that in lieu of such consideration the Board can rely on its general expertise in the field of organization, we think that the Board's conclusions in this case rest upon an erroneous legal

---

12. 351 U.S. at 113, 76 S.Ct. at 684.

13. 351 U.S. at 113, 76 S.Ct. at 685.

14. The Trial Examiner in this case found, as a general matter, that:

When the daily work relationship is completed and [the employee] leaves the plant, he has no right of access to the employer's property, including the plant, unless there is a legal basis for such access. By reason of the fact that the employee was properly in the plant during the day pursuant to the work relationship does not mean that private property, the plant, was converted into employer-employee community property, particularly not after the daily work relationship ended with the employee's departure from the plant.

\* \* \* \* \*

In our opinion, neither the fact that the individual is an employee on the day shift, nor the fact that he is on his own time, nor the exercise of his statutory or constitutional right, accord him

any right to be in the plant at night unless the employer grants him such a right.

\* \* \* \* \*

It is our opinon that it is not a fact that in the normal employee-employer relationship the employee has free access to a building in the plant at any time he chooses after he has completed his work and left the plant. Nor do we believe that returning to the plant as forementioned is the normal or customary time or place for communication between employees. We do not believe that the concept of an employee being on nonwork time equates with right of access to company property when the work relationship for the day has ended.

Apart from section 7 considerations, the Board apparently agreed with these general statements of law and industrial practice.

15. 351 U.S. at 112, 76 S.Ct. at 684.

foundation. As in *Babcock & Wilcox,* the Board has "failed to make a distinction between [relevant] rules of law," [16] in this case between those rules applicable to off-duty employees and those rules applicable to on-duty employees, and this "distinction is one of substance." [17]

■ The Court held in *Babcock & Wilcox* that "accommodation between [organization rights and property rights] must be obtained with as little destruction of one as is consistent with the maintenance of the other." [18] Application of the *Peyton Packing* presumption to invalidate the no-access rule in this case would intrude far into the Company's property rights,[19] which were not at stake in *Peyton Packing,* without any showing that such intrusion is necessary to facilitate the exercise of the employee's organization rights. The result might well be a substantial diminishing of the Company's property rights without any commensurate enhancing of organizational opportunities. In the context of a no-solicitation rule barring on-duty employees from engaging in union activity during non-work time, the em-

ployers' failure to justify the rule could conceivably permit invalidation of the rule without inquiry into the availability of adequate alternative means of communication.[20] On the other hand, the different interests of the employer at stake in this case, constitutionally protected property rights as opposed to the right to maintain discipline, make a presumption of invalidity, which presumption can be overcome only by the showing of "special circumstances" [21] justifying the rule, inappropriate in light of the mandate of *Babcock & Wilcox.* Our conclusion is strengthened by the difference in the legal rights of on-duty employees and those of off-duty employees with respect to access to the secured areas of the plant, the fact that off-duty employees are permitted to engage in union activity on Company property outside the fence, and the fact that the three off-duty employees seeking access to the plant area inside the fence, and thereby occasioning the finding by the Board of an unfair labor practice, were able to solicit *all* company employees while on duty because of shift rotation.[22] Indeed,

---

16. 351 U.S. at 113, 76 S.Ct. at 684.

17. 351 U.S. at 113, 76 S.Ct. at 685.

18. 351 U.S. at 112, 76 S.Ct. at 684.

19. The Board does not argue that the Company could not deny off-duty employees access to Company property in the absence of organizational activities.

20. The *Peyton Packing* presumption would invalidate a no-solicitation rule without the necessity for any inquiry into the availability of adequate alternative means of communication "in the absence of evidence that special circumstances make the rule necessary in order to maintain production or discipline." 49 N.L.R.B. at 843–44. This rule has been somewhat modified by this court, as will be more fully discussed *infra.* In NLRB v. Rockwell Mfg. Co., 271 F.2d 109 (3d Cir. 1959), this court held that when an employer contends that "the employees have readily available alternative means of distribution, the employer's duty to show exceptional justifying circumstances is lessened." 271 F.2d at 115. This court also noted that "the Board was bound to consider * * * the effect that the bar

against distribution would have on the ability of the employees to organize." 271 F.2d at 115. While *Rockwell Mfg.* involved a no-distribution rule rather than a no-solicitation rule, the employer's interests at stake were treated by this court as the same as those at stake in the case of a no-solicitation rule, namely "production, order and discipline." 271 F.2d at 116. Certainly in this case, where property rights are clearly involved, the employer's interests at stake are even greater. *See* page 14 *infra.*

21. Peyton Packing Co., 49 N.L.R.B. 828, 844 (1943).

22. The three off-duty employees seeking access to the area inside the fence are part of the 80 "day workers" who always work from 8:00 a. m. to 4:30 p. m. Aside from the 80 "day workers," all other production and maintenance employees are "shift workers," who rotate among three shifts. The three shifts among which the "shift workers" rotate are 8:00 a. m. to 4:00 p. m., 4:00 p. m. to midnight, and midnight to 8:00 a. m. Each "shift worker," as a result of rotation, works from 8:00 a. m. to 4:00 p. m. at least

the Board has presented no evidence that would justify treating the no-access rule in this case as a presumptively unreasonable impediment to self-organization. Thus we do not believe that the Board's order is consistent with the mandate of *Babcock & Wilcox*.[23]

## II.

Even if we were to agree with the Board's contention that *Peyton Packing* and its reasoning could be applied to the facts of this case, the result we reach would not be different. In NLRB v. Rockwell Mfg. Co., 271 F.2d 109 (3d Cir. 1959), after considering the Supreme Court's decision in *Republic Aviation,* and the effect of that Court's subsequent decisions in *Babcock & Wilcox* and NLRB v. United Steelworkers of America, 357 U.S. 357, 78 S.Ct. 1268, 2 L.Ed.2d 1383 (1958), on *Republic Aviation,* this court held that the Board must consider the element of alternative means of communication before invalidating a no-distribution rule which an employer has attempted to justify. We have already noted that the interest of employers protected by no-solicitation and no-distribution rules, which is the right to maintain discipline, is generally less substantial than the interest involved in this case, namely property rights with explicit Constitutional protection. The showing required to invalidate no-solicitation and no-distribution rules is, therefore, less than that required to invalidate a no-access rule. In *Rockwell Mfg.,* this court stated:

> This is not to say that the Board could not apply a presumption of invalidity to the no-distribution rule. But the burden of proving the unfair labor practice is on the charging party. In order to determine whether the respondent had justified its rule the Board is compelled to examine all of the evidence. If the respondent is entitled to justify its rule, the Board must examine respondent's evidence. Clearly, if the employees have virtually no alternative opportunities to distribute literature and membership applications, then the respondent must show strong justification for its prohibition. Conversely when, as the respondent contends in this case, the employees have readily available alternative means of distribution, the employers' duty to show exceptional justifying circumstances is lessened.
>
> Moreover, the Board's decision merely held that respondent had offered no "valid reason for the application of its no-distribution rule." Nowhere does the Board's decision indicate that it considered the substantial evidence offered by respondent in justification of its rule, nor did it find that it operated to prevent the union from effectively reaching respondent's employees with its pro-union message.

271 F.2d at 115–116.

In this case the Company advanced reasons of safety,[24] security,[25] mainte-

---

one week per month. Thus, in the course of a month, the three organizing employees would work during roughly the same time period at least one week with each of the other production and maintenance employees of the Company.

23. We offer no opinion on the showing that must be made before an non-discriminatory rule barring off-duty employees from entering or returning to secured parts of an employer's premises may be invalidated in order to permit entry or return for purposes of union solicitation. As the Court noted in *Babcock & Wilcox,* the determination of the proper adjustment between organization rights and property

rights rests with the Board, subject to review in the courts of appeals. *See* 351 U.S. at 112, 76 S.Ct. 679, 100 L.Ed. 975.

24. The Company manufactures at this plant chlorine gas and other dangerous chemicals. All persons, including employees, entering the area inside the fence are issued hard hats, goggles, and gas masks or respirators.

25. A total of 18 flasks of mercury valued at $11,000–$18,000 had been stolen from the area inside the fence. The Company believed that only someone familiar with the plant could have known the location of the flasks, and the problem of carrying the flasks, which were slightly larger than

nance of production and insurance requirements to justify the no-access rule, pointing primarily to incidents of theft and dangerous gas leakage [26] to support its arguments. The Board, conceding that the rule was not promulgated as an anti-union measure and that the testimony regarding the reasons underlying the rule was uncontroverted, responded thusly:

> We are not persuaded. Respondent has not shown that any of the incidents were in fact perpetrated by off-duty employees, that any off-duty employee was injured as a result of unauthorized presence in the production areas of the plant, or that production has been in fact interrupted by such unauthorized presence. In fact, it does not point to any incident where an off-duty employee has been found in production areas. Although it argues that protection of the production areas is necessary to maintain conditions set by its insurance carrier, it

has no system of identification or of checking unauthorized personnel in any area of its plant or buildings.

This reasoning does not meet all of the reasons advanced by the Company. And, despite the fact that the Company urged that adequate alternative means of communication existed, the Board did not consider whether the no-access rule in question operated to prevent the union from effectively communicating with the Company's employees. Thus, even if we were to conclude that a presumption of invalidity could be applied to this no-access rule absent factual findings to support such a general presumption, this court's decision in *Rockwell Mfg.* would require us to deny enforcement of the Board's order, due to the Board's failure to consider the element of alternative means of communication before invalidating such rule.[27]

For the reasons stated above, the Board's order will be set aside, and enforcement will be denied.[28]

---

a quart and which weighed 76 pounds each. Another attempt at major theft of mercury had been foiled, when two employees of the Company were apprehended with the stolen mercury in their possession.

26. *See* note 24 *supra*.

27. We are aware that three courts of appeals have specifically considered and rejected this court's reasoning in *Rockwell Mfg.* See National Steel Corp. v. NLRB, 415 F.2d 1231 (6th Cir. 1969); Republic Aluminum Co. v. NLRB, 394 F.2d 405 (5th Cir. 1968) (en banc); NLRB v. United Aircraft Corp., 324 F.2d 128 (2d Cir. 1963), cert. denied, 376 U.S. 951, 84 S.Ct. 969, 11 L.Ed.2d 971 (1964). First, aside from the fact that we are bound by prior decisions of this court absent rehearing en banc, we believe that the reasoning of *Rockwell Mfg.* is an accurate interpretation of the Supreme Court's decision in NLRB v. United Steelworkers of America, 357 U.S. 357, 78 S.Ct. 1268, 2 L.Ed.2d 1383 (1958). Three justices dissented in *United Steelworkers*,

partly because "there has heretofore been no indication that * * * evidence and findings [of inadequate alternative avenues of communication] were indispensable elements to every case in which these employer rules were being examined." 357 U.S. at 367, 78 S.Ct. at 1274. Second, *National Steel, Republic Aluminum,* and *United Aircraft* involved only no-distribution rules applied to employees, and would not apply to the facts of this case, where a rule prohibiting unauthorized access to secured parts of an employer's premises is involved.

28. This disposition of the case makes it unnecessary for us to consider the Company's argument that the *Peyton Packing* presumption can be validly applied only after certain facts are established, including the fact that solicitation "was presented with serious difficulties" as a result of the no-access rule. This argument is based on the Court's discussion of the validity of presumptions in *Republic Aviation*. *See* 324 U.S. at 805, 65 S.Ct. 982, 89 L.Ed. 1372.