**TEXACO, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 71–1281.

United States Court of Appeals, Third Circuit.

Argued Jan. 3, 1972.

Decided May 4, 1972.

Robert H. Kleeb, Philadelphia, Pa., for petitioner.

Nancy Sherman, N.L.R.B. Washington, D. C., for respondent.

Before SEITZ, Chief Judge, and HASTIE and JAMES ROSEN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

We here review an order of the National Labor Relations Board upon a petition of Texaco Inc. to set that order aside and a cross-application of the Board for its enforcement. In dispute is the Board's decision that Texaco violated Section 8(a) (1) of the National Labor Relations Act, as amended, 29 U. S.C. § 158(a) (1) by refusing to allow its employees to distribute certain union literature in a nonwork area of its premises during non-work time.

At all relevant times the employees were represented by Local 8638, Oil, Chemical and Atomic Workers. The distribution of union literature within the plant was covered by an outstanding agreement between the company and the union. It was agreed that union literature might be distributed during non-work time in a designated area near the entrance of the plant. The union asserted that it would not distribute "political, ethnic or other undesirable literature."

The episode that created the present dispute began when union officers requested time off to distribute a particular leaflet in the approved area of the company premises. A copy of the leaflet was left at the plant Employee Relations Office. After reading the document, an employee relations officer asked that distribution be postponed until he could confer with other management officers. The union complied with this request. Thereafter, management advised the union that the leaflet contained "undesirable" matter and asked that it not be distributed on company property. The union then distributed the leaflet on public property outside the entrance to the plant and filed an unfair labor practice charge based upon the company's refusal to permit this particular distribution on company property.

The portion of the leaflet to which Texaco objected reads as follows:

"In November, we attended a special Texaco Nationwide [Union] Council Meeting. Many problems were discussed and One requires your cooperation . . . . Over the past several months, Texaco has taken a position of non-recognition of OCAW at various location[s], in particular, the Ventura [Producing] District in California and at Sales Terminals in Port Arthur, Houston, Dallas, San Antonio and Fort Worth, Texas, Tulsa, Oklahoma and Lake Charles, La. Attempts to decertify OCAW, have been made at many other locations, including Claymont, Delaware. This company is using their power, to influence members of our union to abandon the principle of unity . . . . Without a strong union, which we now have, a return to the so called good old days would only be around the corner. Enclosed, is a suggested letter that you may send along with your mutilated credit card to Texaco Inc. If we let this Company know that their policy of Divide and Conquer will not succeed, we will all have a Happy New Year in 1971."

The "suggested letter" attached to the leaflet charged that Texaco has embarked on an anti-union campaign by granting wage increases to non-union sales employees at a facility in Texas and refusing increases to union employees.

It is not disputed that Section 7 of the National Labor Relations Act sanctions the distribution of union literature on the employer's premises at appropriate times and places.[1] And in this case there is no denial that the proposed

1. Republic Aviation Corp. v. N.L.R.B., 1945, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372; National Steel Corp., Great Lakes Steel Division v. N.L.R.B., 6th Cir. 1969, 415 F.2d 1231.

place and time of distribution were appropriate. Moreover, the employer's ban did not apply to the distribution of all union literature, or indeed any literature except a particular leaflet. We have to decide simply whether, as Texaco contends, the content of a particular leaflet placed its distribution outside the normally recognized privilege to distribute union literature on the premises.[2]

Texaco makes three points: that the leaflet, by recommending that employees mutilate and surrender their credit cards, urged the employees to boycott Texaco products and thus be "disloyal" to their employer; that the leaflet contained untrue statements amounting to false charges of anti-unionism against Texaco, and that the employer had properly found the leaflets "undesirable" within the meaning of the union's undertaking not to distribute "political, ethnic or other undesirable literature."

The argument that distribution of the leaflet was not privileged because it recommended "disloyal" action is bottomed upon the familiar *Jefferson Standard Broadcasting case*.[3] But that decision turned upon the Court's determination that a public charge by employees, that the television station which employed them had inadequate equipment and broadcast inferior and uninteresting programs, was a type of disloyal activity unprotected by the Act because it was a disparagement of the employer's product not made in the context of an appeal for support in a labor dispute.

■ In contrast, the present leaflet, most broadly construed, did no more than to urge employees to put pressure on their employer to stop alleged anti-union activity by threatening to withhold their patronage as purchasers of the employer's products. Certainly the Act protects employees in appeals, by picketing or by the distribution of literature, to the public to withhold patronage from their employer in protest against his alleged anti-union activity.[4] It cannot be less acceptable for employees to take the less drastic step of threatening to withhold their own patronage for the same reason.

Next, it is said that the leaflet was not privileged union literature because it employed false statements of fact to make the employer appear anti-union. The leaflet charged that Texaco had "taken a position of non-recognition of" the union at various other plants. Actually, the record shows that Texaco had succeeded, albeit in a lawful manner, in having the union decertified at two facilities and thereafter had granted wage increases to unorganized workers at those facilities. In addition, this employer had successfully resisted union strikes over working conditions.

■ Technically, none of those acts constituted "non-recognition" of the union. However, the accompanying form of letter, that employees were asked to sign as a protest against the wrongs set out in the leaflet, made it clear that the conduct loosely and inaccurately called "non-recognition" was Texaco's refusal to accede to union demands at some facilities and its granting of preferential treatment to non-union employees at others. Actually, such conduct is not very different from "non-recognition" in its impact upon the effectiveness and the standing of the union. In these circumstances, the trial examiner found, and the Board agreed, that the statement in question, though not technically correct, was "not deliberately or mali-

---

2. In answering this question we are not aided by our recent decision in Diamond Shamrock Co. v. N.L.R.B., 3d Cir. 1971, 443 F.2d 52, which appellant has discussed at some length. For what we approved in that case was an employer's refusal to permit any union solicitation in specified parts of a plant.

3. N.L.R.B. v. Local Union No. 1229, 1953, 346 U.S. 464, 74 S.Ct. 172, 98 L.Ed. 195.

4. N.L.R.B. v. Fruit and Vegetable Packers, 1964, 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129; N.L.R.B. v. Hollywood Brands, Inc., 7th Cir. 1968, 398 F.2d 294; N.L.R.B. v. Crowley's Milk Co., 3d Cir. 1953, 208 F.2d 444.

ciously inaccurate." Moreover, quoting the trial examiner: "It is well settled that misstatements made in the course of concerted activity which denounce an employer for his conduct in labor relations . . . only forfeit the statutory protection when it is evident that the statements are deliberately or maliciously false."[5] Accordingly, we conclude that the Board was justified in holding that the inaccuracy in the leaflet was not such as to excuse the employer's refusal to permit distribution of this union literature on its premises.

■■ The final contention of appellant is that the promise of the union not to distribute "undesirable" literature effectively waived the employees' right to distribute the leaflet in question.[6] The courts and the Board have repeatedly held that a relinquishment or waiver of a protected right must be "clear and unmistakable."[7] It is not clear on its face what the union's promise meant in this case. A union participant in the discussion that resulted in the union's promise said that he understood "undesirable" to mean profane, vulgar or socially unacceptable. Management takes the view that "undesirable" includes anything that reflects unfavorably upon the employer and is not strictly accurate. We have pointed out that, but for the promise in question, the distribution of the leaflet would have been protected activity. We hold that the union's undertaking was ambiguous and, therefore, should not be construed as waiving the otherwise protected right to distribute a recital of alleged anti-union activity coupled with a call for concerted action in protest against the employer's conduct.

The petition to set aside the order of the Board will be denied and the order will be enforced.

---

5. *Accord,* Owens Corning Fiberglas Corp. v. N.L.R.B., 4th Cir. 1969, 407 F.2d 1357; Walls Mfg. Co. v. N.L.R.B., 1963, 116 U.S.App.D.C. 140, 321 F.2d 753, cert. denied 375 U.S. 923, 84 S.Ct. 265, 11 L.Ed.2d 166.

6. Like the Board, we leave open the question whether even an unambiguous waiver of the privilege of distributing such literature as we have here would be legally effective. *Cf.,* N.L.R.B. v. Mid States Metal Products, Inc., 5th Cir. 1968, 403 F.2d 702.

7. United Aircraft Corp. v. N.L.R.B., 2d Cir. 1971, 440 F.2d 85; N.L.R.B. v. Perkins Mach. Co., 1st Cir. 1964, 326 F.2d 488; Timken Roller Bearing Co. v. N.L.R.B., 6th Cir. 1963, 325 F.2d 746.