**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BEECH AIRCRAFT CORPORATION, Respondent.**

No. 72–1780.

United States Court of Appeals, Tenth Circuit.

Aug. 22, 1973.

David Miller, Atty., NLRB (Peter G. Nash, Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and William Wachter, Atty., NLRB, on the brief), for petitioner.

Richard L. Barnes, Tulsa, Okl. (C. A. Kothe, Kothe & Eagleton, Inc., Tulsa, Okl., on the brief), for respondent.

Before LEWIS, Chief Judge, LARAMORE,* Senior Judge, and McWILLIAMS, Circuit Judge.

McWILLIAMS, Circuit Judge.

This is an enforcement proceeding instituted in this court by the NLRB against Beech Aircraft Corporation, a Delaware corporation which manufactures aircraft, aircraft assemblies and aircraft parts at various places, including a plant in Salina, Kansas, which is the particular plant involved in the present proceeding. The order which the Board seeks to enforce concerns two of Beech's employees in its Salina plant, one Dudley Ryals, and his crew chief, William Landers. Ryals was employed in Beech's Plastics Department and had a job classification as a Spray Painter. As indicated, Landers was in the same department and was a crew chief.

As concerns Ryals, the Board found that he had been laid off work by Beech because of protected union activities in violation of Section 8(a)(3) of the Act and as a remedy for this wrongdoing ordered that Ryals be reinstated to his former position as a Spray Painter, or the equivalent thereof, and that he be made whole for any loss of earnings or other benefits. The Board now seeks enforcement of that order.

As concerns the employee Landers, the Board found Beech guilty of an unfair labor practice in that it violated Section 8(a)(1) of the Act by its several interrogations of Landers wherein it attempted to influence Landers regarding the statements he was going to give, and did give, the Board's agent sent to in-

* Senior Judge Don N. Laramore, United States Court of Claims, sitting by designation.

vestigate the Ryals layoff. Although the Board found that Beech attempted to influence and persuade Landers to "go easy" on the information he proposed to give, and did in fact later give, the Board's investigative agent, the Board declined to find that Landers' subsequent transfer from the Salina plant to Beech's Wichita, Kansas, plant was in retaliation for Landers' statements to the Board's agent. By way of penalty for this particular violation, the Board ordered Beech to post certain notices to employees, and the Board now seeks enforcement of that order too. Before considering separately the Ryals and Landers matters, reference in some detail to the evidence adduced before the Board's Administrative Law Judge will put this entire controversy in focus.

Ryals was first employed by Beech in its Salina plant in February 1968, and was initially employed as a bench machinist in the Machine Shop, known also as Department 701. Ryals soon became a member of District Lodge No. 70 of the International Association of Machinists and Aerospace Workers, with which Beech had a collective bargaining agreement. During the ensuing months of his employment, Ryals, under the bargaining agreement between Beech and the Union, instituted some four or five so-called "grievances" with the Union regarding promotions and job assignments. The evidence regarding the details of these grievances is very sketchy and about all we know is that he supposedly "won" most of them. In any event, in the early part of 1970 Ryals was transferred to the Plastics Department, known also as Department 710. Eventually Ryals was given a training course lasting some five weeks as a Spray Painter, and on October 5, 1970, was given the job classification as a Spray Painter, and, as such, he was the only one in the Plastics Department with that particular job classification. Ryals continued in the Plastics Department with this same job classification until he was laid off on January 8, 1971.

Sometime in May 1970, Ryals was appointed by Beech to serve as a "safety councilman" and, taking his duties most seriously, he thereafter proceeded to direct Beech's attention to some 50 safety problems, involving such things as traffic aisles being blocked by airhoses and other miscellaneous equipment, problems attendant to electrical wiring, suggested installation of exhaust fans to alleviate a dust problem caused by sanding, cutting and grinding of fiberglass in the Plastics Department, and the like.

Sometime during the last of 1970 and the first week in 1971, Beech determined that there would be a layoff because of economic necessity. We regard the fact that the layoff with which we are here concerned was due to economic necessity to be a significant fact, which fact has never been in dispute. And such was the specific finding of the Administrative Law Judge. So, there was going to be a layoff, because of economic necessity, and there ensued the ticklish question as to who would be laid off. As concerns the Plastics Department, it was determined by management that nine employees would be laid off in that department, and so then the next question was, which nine would be laid off.

The collective bargaining agreement between the Union and Beech had an entire article relating to seniority, namely Article V. More detailed reference will be later made to Article V. We would simply note here that, with exceptions which will become important to a resolution of this controversy, the agreement provided that, as concerns a reduction of forces and layoff, "seniority shall prevail." We take this to mean that employees with less seniority will be laid off first.

As indicated, nine were to be laid off in the Plastics Department. As concerns the matter of seniority, Ryals was fifth from the bottom of the seniority list, i. e., four employees in the Plastics Department had *less* seniority than Ryals, and every other employee in the Plastics Department had *more* seniority

than Ryals, there then being a total of 53 employees in that particular department. It was in this setting that Ryals was given a layoff notice on January 7, 1971. And then the present dispute arose, Ryals claiming that he was being laid off in violation of the bargaining agreement and because of his so-called "union activities"; whereas, Beech's position in this court, as it was before the Administrative Law Judge, is that Ryals was laid off in accordance with the seniority provision in the collective bargaining agreement.

Two sections of Article V in the collective bargaining agreement between the Union and Beech have bearing on the present controversy. In section 1 of that article appears the following:

" * * * In all layoff and recall, the rules of seniority as provided in this agreement shall prevail *where seniors are competent. Competency* is assumed to include the factors of ability, attendance, efficiency and physical fitness as substantiated by Company records, as well as the capacity and general attitude to work efficiently with other employees to a common purpose." (Emphasis added.)

Section 13(a) of that article reads as follows:

"13. Reduction of Forces and Layoff

(a) In layoffs, departmental and/or occupational seniority shall prevail where seniors are *competent."* (Emphasis added.)

As indicated, when Ryals received his notice of layoff a dispute immediately arose. This dispute was, to some degree at least, the result of a misunderstanding on the part of not only Ryals, but Beech as well, as to just how the seniority rule was to be applied. At least, according to the record, at or about the time of Ryals' layoff, Beech was not justifying its action on the grounds that it was simply applying the rule of strict seniority. By the same token, Ryals, initially at least, felt the seniority rule did not affect him since he was the only employee holding the job classification of Spray Painter. In this latter connection, the Union's plant chairman at the hearing before the Administrative Law Judge testified that he had been "straightened out" by his senior business representative to the end that "department" seniority, rather than "occupational" seniority, "is the controlling thing as far as layoffs and bumping back" are concerned. And so, in our view, the fact that Ryals was the only employee with the job classification of Spray Painter is of no real significance, and the important factor is departmental seniority.

Before concluding this rather lengthy resume of the evidence, which we deem necessary to an understanding of the problem and our resolution thereof, we note, as did the Administrative Law Judge, that in the weeks and months preceding Ryals' layoff, friction had been developing between Ryals and the department foreman and plant manager. The Judge found that Ryals' institution of the four or five grievances had provoked management, and that similarly all of Ryals' many suggestions as safety councilman had contributed to the buildup of ill feeling on the part of both Beech and Ryals. We have no doubt that Ryals was regarded by Beech as a "problem child," a statement which was attributed to, and not denied by, Beech's plant manager.

To round out the factual picture, as Ryals was being laid off, management began a search within the Plastics Department to find someone who could perform Ryals' duties as a Spray Painter. An employee named Rhodes, who had filled in for Ryals when he was absent, was asked, but Rhodes declined. Beech then offered the job to one Boyer, who was a clerk and a tool chaser in the Plastics Department. Boyer had seniority over Ryals and although Boyer had no experience, as such, spray painting, management felt he knew the fundamentals of the job. Anyway, Boyer in fact took over Ryals' duties and in our view the crucial issue in this case is whether there is substantial evidence to support

the finding of the Judge that Boyer was not "competent" as that word is used in the bargaining agreement to perform Ryals' duties as a Spray Painter. If the evidence on this particular point be substantial, then the Board's finding that Ryals was laid off; not in accord with the agreement, but because of his protected union activities, should be upheld. If, however, there be no such substantial evidence, then the Board's finding cannot be upheld. And if this exception to the seniority rule does not come into play, then the seniority rule controls, and Ryals' layoff resulted from the seniority rule as contained in the agreement between the Union and Beech, not because of Beech's desire to get even with Ryals for his union activity.

It was on this general state of the record, then, that the Administrative Law Judge found that Ryals was discriminatorily laid off because of his protected union activities, and in so doing rejected the argument that Ryals' layoff was in accord with the seniority provisions of the agreement and, in this regard, found, in effect, that Boyer was not competent to assume Ryals' spray painting duties. Our review of the record convinces us that such latter finding is not supported by "substantial evidence on the record considered as a whole," and accordingly the Board's order as it relates to Ryals should not be enforced. 29 U.S.C. § 160(e). *See also,* Universal Camera Co. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950); Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938); N. L. R. B. v. Meinholdt Manufacturing, Inc., 451 F.2d 737 (10th Cir. 1971); Pacific Intermountain Express Co. v. N. L. R. B., 412 F.2d 1 (10th Cir. 1969); and N. L. R. B. v. Machine Products Co., 198 F.2d 313 (10th Cir. 1952).

In analyzing the evidence before the Board, we are mindful that it is not our task to weigh the evidence or adjudge the credibility to be given the various witnesses. Such·is the function of the Board. At the same time, as was said in N. L. R. B. v. Machine Products Co., *supra* at 316, "we are poignantly aware of our ultimate responsibility for the rationality of the Board's decision." If there be no substantial evidence, and we bear down on the word substantial, to support a critical finding of the Board, then its request for enforcement of its order must be denied.

We agree with the Board that there was much evidence that Beech was unhappy, and markedly so, with Ryals' performance as safety councilman. Certainly there is evidence that certain of Beech's representatives wanted to "get" Ryals' job, one way or another. However, as we see it, if Ryals' layoff was in accord with, and in fact dictated by, the seniority rule, then it simply cannot be found that the layoff resulted from management's displeasure over Ryals' protected union activities. The former would preclude the latter. So, if Ryals' layoff was required by the seniority rule provision in the collective bargaining agreement, the fact that Beech welcomed the opportunity to lay off Ryals does not make the layoff discriminatory or unlawful. *See,* Cain's Coffee Company v. N. L. R. B., 404 F.2d 1172 (10th Cir. 1968); Serv-Air, Inc. v. N. L. R. B., 395 F.2d 557 (10th Cir. 1968); N. L. R. B. v. Birmingham Publishing Company, 262 F.2d 2 (5th Cir. 1959); Frosty Morn Meat, Inc. v. N. L. R. B., 296 F.2d 617 (5th Cir. 1961); and Klate Holt Company and Robert Earl Davis, 1967 CCH NLRB Decisions, ¶ 20,950 at 27,090.

As we understand the seniority rule, and in this one particular, at least, the parties appear to be in agreement, Ryals' layoff would be dictated by the seniority rule and his low seniority rating, i. e., fifth from the bottom of the seniority list, *unless* the Board's finding that Boyer was not "competent" to perform Ryals' duties as a Spray Painter is supported by substantial evidence. If this finding is supported by substantial evidence, then the seniority rule apparently would not dictate Ryals' layoff, and assuming that certain other hurdles could be overcome, the Board's finding

that Ryals' layoff resulted from his protected union activities would be upheld. But, as above indicated, our study of the record convinces us that there is not substantial evidence to support the finding that Boyer was not competent to assume Ryals' duties. In such circumstance, the seniority rule controls, and Ryals was laid off in accord with the agreement between the Union and Beech. We parenthetically note that seniority rights are valuable rights and in our view the seniority rule should not be lightly departed from. If Ryals is not to be laid off, then someone else higher up on the seniority list will be.

The evidence that Boyer was not competent to assume Ryals' duties came in the main from Landers. In this regard, we are aware that a foreman who was on vacation when Boyer took over the job of Spray Painter testified that it took Boyer several weeks to attain a satisfactory level of performance. Landers, in response to only a very few questions, did testify that in his opinion the quality of Boyer's work was "no good" and that some of his work had to be "done over." Several other witnesses, however, including the Union's plant chairman, testified that Boyer's performance on the job was satisfactory. And the fact of the matter is that Boyer was still performing Ryals' duties as a Spray Painter some nine months later when the Judge held his hearing into the matter. It is on this state of the record that we are simply unable to conclude that there is substantial evidence to support any finding that Boyer was not competent to perform Ryals' duties as a Spray Painter. There is nothing in this record to indicate that the duties of a Spray Painter are that unique. Absent, then, that critical finding, the strict seniority rule grabs hold and controls. Hence, Ryals' layoff was not by way of retaliation for any possible union activities, but resulted from the seniority rule.

For all of these reasons, then, we decline to grant enforcement of the Board's order as concerns Ryals.

## LANDERS

■ As above mentioned, the Board, on request, sent one of its investigative agents to Salina to investigate Ryals' complaint. This agent made arrangements to talk with Landers about the matter. It was in this setting, according to Landers, that on several occasions he was approached by management with the suggestion that if he would "shade" his statements, he would receive certain favorable treatment from the company. In our view, there is substantial evidence to support this particular finding and the Board's order in this regard should be enforced.

■ We fully realize that as concerns the Ryals matter, we are holding that Landers' testimony does not constitute "substantial evidence" and that as concerns his own complaint, his testimony is sufficient to constitute substantial evidence. Any apparent contradiction disappears, in our view, when Landers' testimony on these two different issues is examined in context. As concerns Boyer's competency and capabilities in the art of spray painting, Landers' testimony was conclusory in nature and singularly lacking in detail. As indicated, only a few questions were asked of him on this particular issue. However, as to his several meetings with management when he was in the process of being interviewed by the Board's investigative agent, such were explored in much greater depth and detail. It is on this basis that we conclude that Landers' testimony is insufficient to constitute substantial evidence as to Boyer's lack of competency in the field of spray painting, but at the same time we conclude that his testimony is sufficient to constitute substantial evidence as to the attempted importuning of him by management.

Accordingly, enforcement of the Board's order reinstating Ryals and granting him back pay is denied. Enforcement of the Board's order in the Landers matter is granted.